The Township of Bensalem and Stanley Horowitz, Appellants *v.* Richard Press, Sr., and Jean B. Press, his wife, Appellees.

236

Argued June 7, 1985, before Judges DOYLE and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Benjamin E. Zuckerman,* with him, *Henry F. Huhn* and *Leslie G. Dias,* for appellants.

*Edwin N. Popkin,* with him, *John P. Koopman, Begley, Carlin & Mandio,* for appellees.

OPINION BY JUDGE DOYLE, November 27, 1985:

This is an appeal by Appellants Township of Bensalem. (Township) and Stanley Horowitz (Horowitz) the Township's zoning officer from an order of the Court of Common Pleas of Bucks County dismissing post-trial motions for judgment notwithstanding the verdict and for a new trial as well as a motion to dismiss for lack of subject matter jurisdiction.

Appellees Richard and Jean Press (the Presses) were the owners of premises in the Township upon which they operated a children's camp, a nursery school and an adult swim club as legal non-conforming uses. The camp and nursery school were begun in 1952 prior to the enactment of the Township's zoning ordinance in 1954 and the swim club was permitted pursuant to a decision of the Zoning Hearing Board (ZHB or Board) in 1962.

. In the spring of 1975 the Presses entered into a lease-purchase agreement with a Mr. D'Onofrio which agreement provided for the sale of the prem-

ises for $630,000.00 less certain credit for lease payments made prior to settlement. The lease agreement contained a provision permitting the lease-purchaser to terminate the agreement in the event of the issuance of "a cease and desist order by any lawful government agency because of [lessee's] operation of the facilities as they are presently authorized for lessor's use. . . ."

On June 11, 1975 Horowitz issued a cease and desist order to the Presses and a copy of this order was sent to D'Onofrio. The June 11 order was based upon an alleged "failure to obtain a use and occupancy permit." On June 17, 1975 a second cease and desist order was issued to the Presses; again, a copy went to D'Onofrio. The basis for this cease and desist order was an alleged use of the premises contrary to the R-1 residential use regulations of the Township's zoning ordinance.

Upon receipt of these notices the Presses' attorney advised Horowitz that the uses to which the premises were being put had previously been determined to be legal non-conforming uses and that there was no justification for requiring a new use and occupancy permit. Horowitz was also told that his enforcing the cease and desist orders would have dire consequences for the Presses.

As a result of the June 17, 1975 order, a copy of which D'Onofrio received on June 19, 1975, D'Onofrio exercised his option and terminated his lease-purchase agreement in a letter to the Presses dated June 23, 1975. The Presses then filed an appeal with the ZHB from the issuance of the orders.[1] The August 5, 1975 minutes of the ZHB report the following:

---

[1] There is a dispute as to whether the Presses appealed to the ZHB from their orders or from the ones sent to D'Onofrio. Because, as will presently become clear, this instant cause of action is separate from the ZHB appeal, the point is irrelevant.

MR. DENKER: I will make a motion that this is not properly before the Board at this particular time, and we should not hear the matter and, therefore, the zoning officer should revoke the cease and desist order.

(WHEREUPON THERE IS FURTHER DISCUSSION BY THE PARTIES)

MR. DENKER: My motion is on the floor.

MR. STEWART: With the opinion of our solicitor in mind, I feel that it is improperly brought before this Board. I will second the motion.

A motion has been made and seconded. All those in favor?

MR. DENKER: Aye.

MR. STEWART: Aye.

MR. BELL: Opposed.

With that, I also feel that there are numerous zoning violations on this property and *I can only hope that our zoning officer will file it properly* and bring it back before this Board to clear up the zoning violations. (Emphasis added.)

Subsequent to August 5, 1975 the Presses brought suit in the common pleas court against the Township and Horowitz alleging that the issuance and failure to rescind the June 17, 1975 order was negligent and/or reckless conduct on the part of Horowitz in his capacity as zoning officer. The jury, by verdict slips containing specific interrogatories, found that Horowitz's conduct was negligent and reckless, that his conduct was the legal cause of the Presses' losses, and that the Township was liable. The Presses were awarded $400,000.00 in compensatory damages which amount was assessed jointly against the Township and Horowitz. In addition, punitive damages were

240

awarded against Horowitz for $500.00 and against the Township for $250,000.00.

Numerous errors have been asserted on appeal and we will address them seriatim.

## THE JURISDICTIONAL ISSUES

Preliminarily we note that this Court's jurisdiction over the instant appeal is, at best, attenuated. The appeal is *not* from any trial court ruling on the cease and desist order because, as will become clear presently, the June 17, 1975 order was not appealed to the trial court. Rather this case involves a separate suit for damages against the Township and Horowitz based upon Horowitz's conduct with respect to the issuance and failure to rescind the June 17, 1975 order.[2] Nonetheless the suit here did have its origins in the cease and desist order and does involve an examination of the powers of the zoning officer under Section 614 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10614. Accordingly, we believe this case can be viewed as a proceeding wherein there is drawn into question the application, interpretation or enforcement of the municipality's zoning ordinance and the affairs of the municipality and its employees and, hence, we will treat the appeal as one falling within our jurisdiction pursuant to Section 762(a)(4)(i)(A) of the Judicial Code, 42 Pa. C. S. §762(a)(4)(i)(A).[3]

[2] The Presses' tort theory rests upon the June 17, 1975 cease and desist order and not on the June 11, 1975 order because it was the June 17 order which caused the lessee to exercise his option to terminate the lease.

[3] It could conceivably be argued as well that our jurisdiction may be invoked pursuant to Section 762(a)(7) which permits us to review "[m]atters in which immunity has been waived pursuant to Subchapter C of Chapter 85 (relating to actions against local par-

In reviewing, as we do here, whether judgment notwithstanding the verdict is warranted the evidence must be considered in the light most favorable to the verdict winner who must be given the benefit of all reasonable inferences of fact arising from the evidence. *Broxie v. Household Finance Co.*, 472 Pa. 373, 372 A.2d 741 (1977). In addition, any conflict in the evidence must be resolved in favor of the verdict winner. *Id.* A judgment notwithstanding the verdict will be entered only in clear cases. *Id.* In reviewing the denial of a motion for a new trial we must determine whether the verdict is so contrary to the evidence as to shock the Court's sense of justice. *Morgan v. Philadelphia Electric Co.*, 299 Pa. Superior Ct. 545, 445 A.2d 1263, 1265 (1982). The grant or denial of a new trial is within the sound discretion of the trial court. *Id.*

Appellants' first argument is an attack upon the jurisdiction of the common pleas court to hear the matter. Appellants maintain that the Presses should have appealed the decision of the ZHB to the trial court. It is undisputed that they did not do so. Indeed, the

ties)." While it is true that immunity was not waived by statute (this case, as explained in the opinion, postdates *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973), which abrogated governmental immunity by judicial fiat, and predates statutory law limiting waiver of governmental immunity), the effect here is as though immunity had been statutorily waived. Actually, there was no doctrine of immunity extant at the time of the occurrence and hence no "waiver" could exist. But see *Casey v. Geiger*, Pa. Superior Ct. , n. 11, A.2d , n. 11 (No. 2110 Philadelphia 1982, filed October 4, 1985) wherein the Pennsylvania Superior Court expressed its view that Commonwealth Court would not have jurisdiction of appeals arising under Section 762(a)(7) during the time period in question here. In any event the parties have not challenged the jurisdiction of this Court and technically the appeal is perfected pursuant to Section 704(a) of the Judicial Code, 42 Pa. C. S. §704(a).

242

Presses are not seeking a revocation of the cease and desist order, but rather are seeking damages emanating from what they claim to be the wrongful issuance of, and failure to rescind, that order. To understand why we reject appellants' contention that the failure to appeal the Board order deprives the trial court of jurisdiction we must examine the portion of the minutes of the August 5, 1975 meeting quoted earlier. Appellants contend that the minutes reflect that the Board had decided it had no jurisdiction over the matter, a determination which they assert the Presses should have appealed. Appellants allege that this lawsuit is thus improper because it permits a collateral attack upon the unappealed Board action. We agree that the Presses could not attack by way of a suit initiated in common pleas court what was clearly an erroneous decision by the Board. *See* Sections 909 and 1001 of the MPC, 53 P.S. §§10909 and 11001. But, the basis for the cause of action *sub judice* was not to attack, collaterally or otherwise, the Board's action. The Board's action at the August 5th meeting can reasonably be interpreted as directing that the cease and desist order be rescinded, *and that is exactly the remedy the Presses sought.* They could have reasonably concluded from the Board's statements that they "won" their appeal at least for the time being and thus would have had no reason for further appeal. While appellants cite numerous cases holding that a landowner's failure to appeal a zoning decision can not be remedied via a separate lawsuit in common pleas court, in every case cited, the landowner was seeking from the trial court a remedy which it should have sought from the zoning board. That is not the case here. The trial court wrote, "the matter before us does not involve the zoning issue of the legal conformity of the subject premises. Rather,

the issue presented to the jury was the conduct of the zoning officer and other Township officials in connection with the subject cease and desist orders." We agree with this statement and because the Presses' case cannot be properly charged with failure to appeal the cease and desist order, appellants' motion to dismiss for lack of jurisdiction insofar as it is based on this theory was properly denied by the trial court.

Appellants also contend that the Presses lacked standing to bring this action because they did not appeal the cease and desist order of which they complained. This contention must also fail because it, too, is based upon the faulty premise that the Presses should have appealed. Thus the trial court properly determined that Appellants' motion could withstand challenge.

## THE IMMUNITY ISSUE

Appellants next contend that Horowitz is a public officer who is immune from suit.[4] Preliminarily we note that this cause of action accrued after the Pennsylvania Supreme Court decided *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973) (which abolished the doctrine of governmental immunity) and before the adoption of the Political Subdivision Tort Claim Act,[5] 42 Pa. C. S. §§8541-8542. Thus, the Township has no immunity from suit. But *Ayala* did not involve the issue of im-

---

[4] Appellants do not clearly explain whether they believe Horowitz is entitled to absolute immunity (reserved for high public officials) or a limited immunity which is available to other officials. For an explanation of these doctrines *see Dubree v. Commonwealth,* 481 Pa. 540, 548, 393 A.2d 293, 296 (1978) (EAGEN, C. J., dissenting).

[5] Act of. November 26, 1978, P.L. 1399, *as amended, formerly* 53 P.S. §§5311.102 to 5311.803, repealed by the Act of October 5, 1980, P.L. 693. Similar provisions now appear in Sections 8541 to 8564 of the Judicial Code, 42 Pa. C.S. §§8541-8564.

munity granted a public official. Accordingly, Horowitz could have a defense which is unavailable to the Township. *See Wicks v. Milzoco Builders, Inc.*, 25 Pa. Commonwealth Ct. 340, 360 A.2d 250 (1976) (holding that Township supervisors' absolute immunity from suit because of their positions as high public officials may not be used to shield the Township itself from liability).

Whether or not Horowitz falls within the category of persons afforded immunity because of their status as public officers, agents, and employees must be determined by the criteria set forth in *DuBree v. Commonwealth*, 481 Pa. 540, 393 A.2d 293 (1978). The Supreme Court stated in *DuBree:*

> Where, but for the defendant's status, a right of action would lie under analogous rules of law, and no public policy would be promoted in shielding a defendant from liability, and the plaintiff has not failed to pursue existing remedies, denial of the possibility of recovery is unjustified.

*Id.* at 546, 393 A.2d at 296. Thus we must consider whether there is a public policy reason for shielding a zoning officer from liability and whether the Presses have pursued existing remedies. Taking the latter question first we again reject appellants' contention that the Presses should have appealed the Zoning Board's determination and reiterate that the Presses were not required to appeal where it appeared that the remedy that they sought had been granted. Accordingly we hold that there has been no failure to exhaust administrative remedies.

With respect to the public policy question, traditionally immunity is granted to individuals who are vested with discretion, the purpose being to alleviate the fear that every policy decision will subject them

to lawsuits. *See DuBree; Yealy v. Fink,* 43 Pa. 212 (1862). In *DuBree* the court stated that when the nature of a public servant's decision "may not be measured against a predictable standard of care, the possibility of litigation may tend to discourage the making of clear choices." 481 Pa. at 544, 393 A.2d at 295. *DuBree* thus recognized that public policy can be advanced by granting immunity to those who must make decisions which are not subject to assessment by definable standards. Under *Yealy* and *DuBree* it is apparent that whether one is granted immunity will depend upon whether his duties are discretionary and that decision in turn on whether his decisions can be measured by a predictable standard of care.

Section 614 of the MPC provides that a zoning officer "shall administer the zoning ordinance in accordance with its literal terms and shall not have the power to permit any construction or any use or change of use which does not conform to the zoning ordinance." "[A] duty is discretionary if it involves judgment, planning, or policy decisions. It is not discretionary if it involves enforcement or administration of a mandatory duty at the operational level, *even if professional expert evaluation is required. . . .* The key is whether the duty is mandatory or whether the act complained of involved policy-making or judgment." *Cerino v. Township of Palmer,* 265 Pa. Superior Ct. 1, 8, 401 A.2d 770, 773 (1979), quoting *Jackson v. Kelley,* 557 F.2d 735, 737-38 (10th Cir. 1977) (emphasis added by the *Cerino* court). Appellants themselves take the position that a zoning officer is without discretion when they argue that he is required to enforce the zoning code within its literal terms. It is also our view that a fair reading of Section 614 of the MPC reveals that a zoning officer is given no discretion. *See also* R. Ryan, *Pennsylvania Zoning Law and Practice,* §9.3.7 (1981). Hence, there is no reason

to afford such individuals even a conditional immunity and we accordingly decline to do so. Therefore, we hold that the trial court, when it refused to grant appellants' motion for judgment n.o.v. on this basis, acted properly.

## THE PUNITIVE DAMAGES ISSUE

Appellants next argue that the trial court erred in refusing to charge the jury that the Presses could not recover punitive damages against the Township. The question of whether punitive damages can be assessed against a municipality absent a statute specifically authorizing such damages is a question of first impression in this Court.[6] The trial court read *Ayala* as the Supreme Court's attempt to place governmental officials in precisely the same position as corporate officers. We certainly agree that the language of *Ayala* is broad, but we believe it to be highly significant that *Ayala* dealt, in fact, only with compensatory damages and was concerned with compensating injured plaintiffs. Nowhere is the question of punitive damages mentioned.

A review of the law in this area has revealed that in other states where the issue of punitive damages against a municipality arose in the absence of a specific statute authorizing an award of such damages the great weight of authority is that such assessment is improper. It would appear that only Iowa and

---

[6] In *Brothers of the Order of Hermits of St. Augustine v. County of Philadelphia*, 4 Clark 120, 7 Pa. L.J. 124 (1847) a *nisi prius* decision of the Pennsylvania Supreme Court, the judge's instructions to the jury stated that punitive damages can not be awarded against a municipality. But because the case was one decided in *nisi prius* and because no opinion was written, the "case" being merely a recitation of the facts and jury instructions, we hesitate to cite it as controlling precedent.

New York have decided to the contrary.[7] The rationale of the majority view is that the purpose of punitive damages is to punish the wrongdoer and when that wrongdoer is a municipality the assessment of punitive damages serves only to increase taxes and so harms the very individuals who, theoretically, should benefit from the award of punitive damages. *Fisher v. City of Miami*, 172 So. 2d 455 (Fla. 1965). Additionally, the *Fisher* court noted that in determining the amount of punitive damages the relevant consideration is the wealth of the defendant. Since a municipality's ability to raise revenue is based upon its taxing power, this measuring stick is of little use. The *Fisher* court further opined that it is to be assumed that municipal officials will carry out their duties and discipline wrongdoing employees if such action is warranted. *See also City of Gary v. Falcone*, 169 Ind. App. 295, 348 N.E.2d 41 (1976). One jurisdiction allowing the award of punitive damages against a municipality, while acknowledging the above arguments, maintains that virtually the same contentions have been raised, argued and rejected with respect to private corporations. The Iowa Supreme Court in *Young v. City of Des Moines*, 262 N.W.2d 612 (1978), also opined that permitting the imposition of punitive damages would result in greater care being taken in the selection and training of municipal employees. Finally, the Iowa court stated that assessing the amount of punitive damages is not an insurmountable problem because this matter is left to the discretion of the jury and is subject to judicial review.

A New York lower court case, *Hayes v. State*, 80 Misc. 2d 498, 363 N.Y.S.2d 986 (1975), *rev'd on other grounds and punitive damages issue not reached*, 50

[7] *See generally, Recovery of Exemplary or Punitive Damages from Municipal Corporation*, 1 A.L.R. 4th 448.

A.D.2d 693, 376 N.Y.S.2d 647, *aff'd per curiam and punitive damages issue not reached,* 40 N.Y.2d 1044, 392 N.Y.S.2d 282, 360 N.E.2d 959 (1976), reaching a result in accord with the *Young* case, was influenced by the fact that case law *prohibiting* the recovery of punitive damages evolved *before* the enactment of the New York statute waiving sovereign immunity. The court thus read the waiver of sovereign immunity as an indication of a trend to allow more generous recoveries against municipalities. Additionally, the court rationalized that had the legislature intended to restrict the waiver to recovery of compensatory damages it would have so specified instead of indicating by broad language that it wished to place municipalities on par with private sector employers. It is to be noted that in Pennsylvania, this "waiver" of immunity arose not from a statute enacted by the legislature, but from the Pennsylvania Supreme Court's eradication of a doctrine which it had previously established.

When the common pleas court decided this issue it did not have the benefit of a recent scholarly opinion written by Judge DONALD WIEAND of the Pennsylvania Superior Court. In considering this issue in *Feingold v. Southeastern Pennsylvania Transportation Authority,* 339 Pa. Superior Ct. 15, 488 A.2d 284 (1985), Judge WIEAND noted that "[a] plaintiff who receives punitive damages has already been compensated for the wrong suffered by an award of compensatory damages. To the extent that an award of punitive damages is not intended as compensation, the courts have said, it is a windfall to the plaintiff. Punitive damages should be awarded, therefore, only if they serve a valid purpose." *Id.* at 28, 488 A.2d at 291. Our own assessment of the matter leads us to conclude, as did Judge WIEAND, that no valid purpose

is served in assessing such damages, but rather the effect is merely to place the burden on the tax paying public. Finally, we agree with Judge WIEAND's cogent observation that the purpose of the *Ayala* decision was to compensate wronged individuals, not punish wrongdoers. In considering this same legal argument, that waiver of sovereign immunity implicitly permitted assessment of punitive damages against a municipality, the Illinois court in *George v. Chicago Transit Authority*, 58 Ill. App. 3d 692, 374 N.E.2d 679 (1978) likewise concluded that abrogation of the doctrine of sovereign immunity did not, *a fortiori*, mean municipalities were liable for punitive damages. We believe this to be the better reasoned approach.

Having determined that the Township in its own right is not liable for punitive damages, the next point for our consideration is the question of whether the Township can be held vicariously liable for such damages.[8] The trial court charged the jury under Section 909 of the Restatement (Second) of Torts §909 (1977). This Section imposes vicarious liability for punitive damages where the principal authorized the doing and the manner of the act, or where the agent was unfit and the principal was reckless in employing him, or where the agent was employed in a managerial capacity and was acting within the scope of his employment, or where the principal or manager of the principal ratified or approved the act. But Section 909 has not been adopted in Pennsylvania. *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa. Superior Ct. 90, 131, 464 A.2d 1243, 1264 (1983). Instead, as noted by the Superior Court, Pennsylvania has adopted a

---

[8] We disagree with the trial court's ruling that this issue was not properly preserved and hence proceed to decide this matter on the merits.

more restrictive rule and "[t]he sum of the matter seems to be that the conduct of the agent who inflicts the injury complained of must be rather clearly outrageous to justify the vicarious imposition of exemplary damages upon the principal." *Id.* at 131-32, 464 A.2d at 1264, *quoting Skeels v. Universal CIT Credit Corp.*, 335 F.2d 846 (3rd Cir. 1964). Thus, the trial court's instruction, which was modeled after Section 909, was erroneous.

On the issue of imposition of punitive damages under a theory of vicarious liability the Pennsylvania Supreme Court, upholding the award of punitive damages in a private sector "dynamite blasting" case, stated:

> Too great caution cannot be exercised in permitting the recovery of punitive damages for the willful or reckless act of a servant not authorized or approved by the master. The rule that permits recovery in such cases is a harsh one, and the plainest principles of justice call for caution in its application. . . . But in this case the acts complained of were done by direction of the defendant's superintendent after notice and with full knowledge of the damage they were doing the plaintiff's property. Apparently they were done in wanton disregard of his rights, and because it was cheaper to pay damages for the injury they might cause than to do the work in a different way.

*Funk v. Kerbaugh*, 222 Pa. 18, 19, 70 A. 953, 954 (1908) (citation omitted). Although *Funk* allowed recovery under the theory of vicarious liability, it is significant first, that the case arose in the private sector and second, that the principal had actual knowledge of its agent's actions. In light of the actual knowledge present in *Funk*, we thus believe, as did

the *Delehanty* court, that Pennsylvania has adopted a restrictive position on the imposition of punitive damages under a theory of vicarious liability.

Our review of this state's law has disclosed no Pennsylvania Supreme Court case considering assessment of punitive damages against a municipality under a theory of vicarious liability. But under the rationale expressed earlier for denying awards of punitive damages generally against municipalities and under the restrictive *Funk* rule, we believe that assessment of such damages against a municipality under a theory of vicarious liability is prohibited. Accordingly, we hold that the Township is not vicariously liable in punitive damages for the actions of Horowitz.

This holding, however, does not preclude Horowitz from being liable for the $500.00 in punitive damages assessed against *him*. The imposition of punitive damages is restricted to instances where actual damages have been shown. *Hilbert v. Roth*, 395 Pa. 270, 149 A.2d 648 (1959). That requirement here has been clearly met. The trial court charged the jury that to hold Horowitz liable for punitive damages they must find his conduct to be outrageous or reckless. This is the proper standard. *See Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 454 n. 6, 197 A.2d 721, 727 n. 6 (1964); *Smith v. Brown*, 283 Pa. Superior Ct. 116, 423 A.2d 743 (1980). The jury, in its special interrogatories, found that Horowitz's conduct was reckless. The record reveals that prior to issuing the cease and desist order Horowitz was informed that the Presses had a valid non-conforming use and that a copy of the decision establishing this was sent to Horowitz, facts which Horowitz admits are true. Nonetheless, Horowitz proceeded to issue the cease and desist order without checking the Township records or consulting with the Township solicitor.

From these facts the jury could properly conclude a reckless indifference existed with respect to Horowitz's conduct in this matter. Accordingly, we do not find the imposition of punitive damages against Horowitz improper.

## THE JURY INSTRUCTIONS

We next consider various allegations of error in the court's instructions to the jury. Appellants maintain that the trial court erred in instructing the jury that if Horowitz was negligent (and, hence liable) the Township was liable for compensatory damages as a matter of law. The court's directive was predicated upon its determination that a master/servant relationship existed and hence that the Township would be liable under the principle of *respondeat superior*. Where the facts upon which a master/servant relationship are not in dispute, the existence of the relationship is a question of law to be decided by the court. *Cox v. Caeti*, 444 Pa. 143, 279 A.2d 756 (1971). Where a master/servant relationship exists, vicarious liability is presumed to exist. *Cox*. The undisputed facts showed that Horowitz was employed by the Township and his services could be terminated by it. Additionally, there was testimony indicating that Horowitz's activities were controlled by the Township's Board of Supervisors to which he directly reported. The trial court wrote:

[A]lthough the powers to administer are delegated to the zoning officer under the M.P.C., Section 614, the general power to enact and carry out the provisions of its zoning ordinance are granted to the governing body of each municipality. M.P.C., §601 (53 P.S. §10610). Defendants go so far as to suggest that a municipal governing body might appeal to the Zoning Hearing Board from a determination of its own

zoning officer, but cites no authority to that effect. We find it most unlikely that any such court decision will be forthcoming, in view of the fact that it is far more likely that the Township zoning officer who does not follow the directions of the Board of Supervisors would be replaced than appealed from.

The trial court went on to state:

> The direct involvement of the supervisors as it specifically relates to this matter was substantiated by a transcript of the Board of Supervisors meeting of July 16, 1975 . . . in which the activities of Stanley Horowitz are discussed at length and in which one statement one supervisor says, '. . . We filed a cease and desist, didn't we?' That statement, and the entire content of the transcript of that meeting, are fully indicative of the Board of Supervisors' involvement in the matter leading to the bringing of this lawsuit.

Additionally, the undisputed testimony established that the initial investigation of the Presses' property was instigated at the direction of the Board of Supervisors, which was advised of the results of Horowitz's investigations on a regular basis. Based upon this evidence the trial court's instruction that a master/servant relationship existed, and hence that the Township was liable in compensatory damages if Horowitz was negligent, was correct.

Appellants, in denying the existence of a master/servant relationship, argue that under Section 614 of the MPC the zoning officer's position is in the nature of an independent contractor. The theory advanced is that because a zoning officer's duties are statutorily imposed he is not directed by the elected officials. We agree with the Presses' brief however that

the fact that duties are established by a statute does not mean that the carrying out of those duties is not under the control and direction of the municipality, and certainly the record evidence suggests a conclusion contrary to that asserted by appellants. Thus, we do not view a zoning officer as an independent contractor.

Appellants next allege the trial court committed error in failing to instruct the jury that under Section 614 of the MPC a zoning officer must enforce ordinances literally. As noted earlier this argument is not helpful to appellants' position that a zoning officer holds a discretionary position entitling him to immunity. While we agree that literal enforcement is required under Section 614, appellants' assertion of what literal enforcement means is absurd. As the trial court sagaciously observed, under appellants' interpretation a zoning officer would be required to cite every use not permitted specifically under the ordinances *including legal non-conforming uses*. Such an interpretation makes no sense and we reject it. We believe, as did the trial court, that the proper interpretation of literal enforcement is that in addition to enforcing the specific zoning ordinances, a zoning officer must also acknowledge non-conforming uses granted under those zoning ordinances. Accordingly, the trial court did not err with respect to this charge. Additionally, while appellants maintain that the trial court asked the jury to interpret Section 614 of the MPC, this did not occur. Rather the trial court explained why appellants' interpretation was wrong and in addition, gave Horowitz the benefit of the doubt by permitting the jury to consider whether Horowitz himself, in good faith, (albeit erroneously) may have construed Section 614 too literally.

Next, appellants contend that the jury should have been charged on the issue of contributory negli-

gence. The alleged contributory negligence related to the issuance of the June 11th cease and desist order (which was not the subject of the Presses' case, *see* note 2) and the alleged failure of the Presses to appeal the Board's decision. The June 11th order is irrelevant and the alleged failure to appeal has already been adequately discussed, *supra*. Suffice it to say there was no evidence of contributory negligence relevant to the subject of this case before the trial court and its refusal to charge on this matter was therefore proper as was its denial of a new trial on this basis. Appellants next allege that the trial court, in essence, charged that the zoning officer had a duty to consult with the Township solicitor. A reading of the charge reveals that this simply was not the case. Rather the trial court stated that one factor that the jury could consider in determining whether Horowitz's conduct was reckless was whether it would have been reasonable, based upon what Horowitz had been told, for him to consult with the Township solicitor. This charge was entirely proper as it was a relevant factor to consider in determining whether there had been negligence or recklessness on the part of Horowitz.

Appellants further assert as error that the trial court erroneously charged the jury with respect to the action taken by the ZHB. The trial court charged that the Board had jurisdiction over the Presses' appeal as a matter of law and that, to the extent the August 5 minutes could be construed as a statement to the contrary, that statement was erroneous. We agree that the trial court could not properly rule on the Board's determination. But the trial court was not doing this. Rather it was *explaining* to the jury the evidence it could consider in determining whether Horowitz had been directed to rescind his June 17 order.

Next, appellants contend that the trial court instructed the jury that Horowitz was under a duty to ascertain the contents of the lease-purchase agreement. Simply stated the trial judge did not so charge, but rather stated that one factor the jury could consider is whether, based on what he knew, Horowitz should have taken steps to find out about the agreement. This is nothing more than a charge on whether Horowitz acted reasonably under the circumstances.

Appellants next contend that the trial court erred in charging the jury that there would be no legal basis for the June 17 order unless the jury found evidence that the premises were put to a use other than a permitted one. Contrary to the appellants' contention, this did not give the jury authorization to reverse the ZHB; rather, it guided the jury in determining whether the issuance of the cease and desist order was reasonable under the circumstances.

Next, appellants argue that expert testimony was necessary to determine whether Horowitz acted as a reasonably prudent zoning officer, analogizing this case to one involving a cause of action for medical malpractice. We believe a lay jury is perfectly capable of assessing whether Horowitz was negligent without expert testimony and any expertise in the law of zoning which was needed was amply supplied by the trial court in its instructions.

We have already determined that punitive damages could not be assessed against the Township. Thus, the trial court erred in its charge on this point. But as to Horowitz the charge was correct and, as noted earlier, there is evidence from which the jury could conclude that his conduct was reckless.

## THE EVIDENTIARY RULINGS

Appellants have also alleged error with respect to numerous evidentiary rulings including the denial of

a motion for mistrial because of a reference to alleged Township harassment of the Presses and the admission and refusal to admit certain pieces of evidence. With respect to these issues the trial court wrote:

> We find all of these matters to be without merit, in view of the extent of the testimony given, and the failure of any of these matters to have been in any way prejudicial to the defendants.
>
> All of these matters are within the sound discretion of the trial judge and are not the basis of a new trial unless it can be demonstrated that the rulings have been substantially prejudicial to the defendant. Granowitz v. Erie Redevelopment Authority, 432 Pa. 243, 247 A.2d 623 (1968).
>
> Without detailing several documents which were admitted over defendants' objection, we found that these were pertinent to the history of the uses of the subject property. Further, the nature of the uses—a well-advertised children's camp, swim club, etc.—and the prior litigation and permit activity with the Township were such as to be pertinent evidence of scienter by the zoning officer and other public officials of the legal status of these uses.

We agree with the trial court and our independent review of the record reveals that the trial court's rulings were correct and in no way constituted an abuse of its discretion.

Based upon the foregoing, the determination of the trial court is reversed only with respect to the imposition of punitive damages against the Township and is affirmed in all other respects.

258

## Order

Now, November 27, 1985, the order of the Court of Common Pleas of Bucks County dated September 13, 1984 is hereby reversed with respect to the imposition of punitive damages against the Township and is affirmed in all other respects.