## Zerbe v. City of Sunbury

484

*Douglas N. Engelman,* for plaintiff.
*Michael Apfelbaum,* for defendant.

FEUDALE, *J.,* January 24, 1990 — Before the court are the defendant's preliminary objections in the nature of a demurrer to counts I through VI and a motion to strike demand for jury trial for counts IV through VI of plaintiff's second amended complaint. Plaintiff has also filed a preliminary objection to the preliminary objections filed by defendant. Briefs have been filed and argument held, and the objections are, therefore, ready for disposition.

## PROCEDURAL HISTORY

Plaintiff filed a complaint against defendant City of Sunbury on or about June 9, 1989. Defendant filed preliminary objections to plaintiff's complaint; these preliminary objections being in the nature of a motion for demurrer and a request for a more specific pleading.

This court, after oral argument, entered an order granting in part, and denying in part, the preliminary objections of defendant. The order was dated August 22, 1989. Plaintiff was given 20 days from the date of the order, to file an amended complaint. The amended complaint was to provide more specificity as to counts III, IV, V, VI, and VIII.

Plaintiff filed an amended complaint on September 8, 1989, within the time provided by the court's order. Defendant on or about September 20, 1989 filed preliminary objections to the amended complaint. Plaintiff exercised his right, under the rules of civil procedure, to file an amended pleading without the need for court hearings. Plaintiff filed his second amended complaint on September 29, 1989. This pleading contains six separate counts and alleges wrongful discharge from employment under the Whistleblower's Act, the Civil Service provisions of the Third Class City Code, and under contract law.

On or about October 10, 1989, defendant filed preliminary objections to the second amended complaint. These preliminary objections are in the nature of a demurrer to counts I through VI. Also included in these objections was a motion to strike demand for jury trial.

On or about October 3, 1989, plaintiff filed a reply to defendant's preliminary objections to the second amended complaint, together with preliminary objections to the preliminary objections. Plaintiff's preliminary objections are in the nature of a motion to strike and assert that defendant has raised three issues in his last set of preliminary objections which it failed to raise previously, and, therefore, said objections are waived. The issues consist of punitive damages, elements necessary for proof of emotional distress, and the right to a jury, trial.

Thus, presently, defendant's preliminary objections and the preliminary objections by plaintiff are the only outstanding matters before the court and said motions are ripe for consideration.

## STATEMENT OF FACTS

Plaintiff was employed with the City of Sunbury from June 1986, until the date of his termination on

April 11, 1989. Plaintiff was the code enforcement officer and was responsible for enforcement of the City of Sunbury's building code ordinance or law. Plaintiff left employment with Paulsen Wire and Rope to take the position of code enforcement officer with the city. At the time of plaintiff's termination of employment with the city, plaintiff was receiving workmen's compensation for a job-related disability. It is not alleged that his discharge was related to his filing a workman's compensation claim.

Defendant, by and through its representatives Michael Apfelbaum (solicitor for the city) and John Michaels (Director of Public Safety), requested that plaintiff voluntarily resign his position as code enforcement officer. No reason was allegedly given by either Apfelbaum or Michaels as to why this request was being made.

Plaintiff questioned Apfelbaum and Michaels regarding the reason for their request that he voluntarily resign and they allegedly refused to respond and requested that he render a decision immediately. When plaintiff refused to resign, defendant's representatives, Apfelbaum and Michaels, terminated plaintiff's employment, said termination to be effective immediately.

Plaintiff requested a written response from the city that his employment was being terminated and further requested the reasons be set forth in writing as to his termination of employment as code enforcement officer. A letter was received by plaintiff on April 13, 1989, but said letter only indicated his termination as code enforcement officer and did not state any reasons for his termination. However, an enclosure of an evaluation from the City of Sunbury of plaintiff was enclosed in this correspondence.

Plaintiff did specifically request a hearing and a written statement of specific and relevant charges regarding his discharge, such request being made in writing and sent by certified mail to the mayor, City Council, and solicitor for the city. The city denied plaintiff the opportunity for such hearing. Wherefore, plaintiff filed a complaint in the within matter.

Plaintiff alleges he was never verbally reprimanded nor provided with any writing from the city which would indicate he was performing his job in a manner that was not satisfactory to the city. To the contrary, plaintiff stated he was commended for his job performance by the Director of Public Safety, John Michaels, as recently as November 16, 1988, as reflected by the personal commendation attached to plaintiff's second amended complaint as exhibit "A."

Finally, plaintiff alleges his termination of employment does not relate to his job performance as code enforcement officer, but is an act of retaliation against him for his cooperation with certain investigative agencies.

Plaintiff further asserts that as a result of the information provided by plaintiff, the Department of Community Affairs froze all state funds from the city. Plaintiff was allegedly advised at one point by the Director of Public Safety, John Michaels, that he should not provide any further information or cooperate.

Plaintiff stated in his second amended complaint a multiplicity of violations related to local state and federal matters. He made allegations of improprieties related to local taxes, parking and landfill monies, and turned information on same over to the Sunbury Police Department upon the advice of the Inspector General's Office. Further allegations were made relevant to a municipal rehabilitation project

(Chestnut Street Rehabilitation Project) regarding workmanship, safety, substandard materials and alleged improprieties by a contractor as to insurance, tax and workman's compensation. Finally, plaintiff alleged misuse of city equipment for political functions in violation of the Hatch Act, violation of Department of Environmental regulations and conflicts of interest between a city official and professional employees.

It is further alleged that Solicitor Apfelbaum represented to the plaintiff: "Plaintiff should not provide the information to any investigative agency as it could cause an investigation and open a big can of worms for the city." Plaintiff allegedly had knowledge of John Michaels being an electrical contractor and doing electrical work in violation of section 109.7 of the BOCA Building Code. Plaintiff avers further that John Michaels, as a representative of the city, knew that plaintiff had such knowledge and may have provided such information to the investigative agencies involved.

Finally, plaintiff maintains Michaels allegedly represented and made statements to plaintiff that he should stop playing detective in a heated discussion between Michaels and plaintiff.

It is well-settled that a demurrer admits all relevant facts sufficiently pled in the complaint and all inferences fairly deducible therefrom. See *Reardon v. Wilbur,* 441 Pa. 551, 272 A.2d 888 (1971); *Engel v. Friend's Hospital,* 439 Pa. 559, 266 A.2d 685 (1970). Only if it is free and clear of all doubt that a cause of action has not been pled should a trial court grant a demurrer. When making such a determination this court must resolve all doubts in favor of overruling the demurrer. *Steiner by Steiner v. Bell Telephone Co.,* 358 Pa. Super. 505, 517 A.2d 1348 (1986).

We will now address each of defendant's arguments.

*Count I Should Be Dismissed Since Zerbe Avers the Existence of an Employment Agreement Without Setting Forth the Essentials of a Contract and He Discusses an Implied Covenant of Good Faith Without Setting Forth the Essential Elements of an Implied Contract*

It has been law in this Commonwealth and most of this nation that absent a contract or statutory right, employees may be discharged at any time, for any reason, or no reason at all. *O'Neill v. ARA Services Inc.,* 457 F.Supp. 182, 185 (E.D. Pa. 1978). The rationale is that it is necessary to preserve managerial discretion in the workplace and maintain freedom of contract. Such was bottomed on a laissez-faire view of the free enterprise system.

A presumption arose that employment was at-will unless there was a contract for a specific duration. This presumption emanated from the American "Wood Rule." H.G. Wood, *Law of Master and Servant,* §134 at 274 (1877); in Feinman, "The Development of the Employment At Will," rule, 20 *American J. Legal History* 118, 126 (1977). It was different from the English common law which presumed that employment contracts were for one year and that an employer would be liable for breach of contract if he terminated the contract before the year without reasonable cause. See e.g., Vol. 1, W. Blackstone, *Commentaries* 413.

Since the age of laissez-faire economics has passed, various courts have taken the position that the presumption should no longer be adhered to with "unquestioned deference." See *Wooley v. Hoffman-LaRouche Inc.,* 491 A.2d 1257 (N.J. 1985). While inroads have indeed been made on the termi-

nation at-will doctrine, questions have been raised as to whether abrogation of the doctrine should occur through "judicial erosion" or by "legislative mandate." K.H. Decker, "At Will Employment in Penna. — A Proposal for its Abolition and Statutory Regulations," 87 Dickinson L. Rev. 477, 479 (1983).

However, a review of the law on a state and national level as to termination at will reveals the area is extremely volatile. As *Martin v. Capital Cities Media Inc.,* 354 Pa. Super. 199, 511 A.2d 830 (1986) explained:

"Taking a nationwide view of the law in this area, it is apparent that what once was a corpus juris of employment relations has become an amorphous mass of confusion replete with holdings that defy reconciliation from one jurisdiction to the next. The at-will presumption, the citadel that once governed the field with such predictability has been eroded of late by piecemeal attack on both the contract and tort fronts and the entire field seems precariously perched on the brink of change."

In the present action Zerbe does not set forth a specific term of employment based upon a statute or a contract. Rather, he asserts that there is a valid consideration for an implied contract for long-term employment. He indicated in paragraph 27 of his second amended complaint that "Defendant impliedly represented that his employment would be long term." Inferentially, he also relies on the alleged lack of criticism in Michaels' letter of commendation dated November 16, 1988.

The law in Pennsylvania is clear that "the at-will employment presumption will be overcome only if the employee can show with clarity and specificity that the parties contracted for a definite period." *DiBonaventura v. Consolidated Rail Corp.,* 372 Pa.

Super. 420, 539 A.2d 865 (1988), citing *Green v. Oliver Realty Co.,* 363 Pa. 534, 526 A.2d 1192 (1987).

The court does not believe Zerbe has alleged sufficient factors to support his claim under count I. Lacking is a consistent pattern of dealing between the employee and employer over a given time period, oral and written words or phrases negating the at-will employment relationship, or employee forbearance from economic gain in exchange for position security. Herein, Zerbe was employed less than three years, left a position in Sunbury at Paulsen Wire Rope for a salary presumably in the same general range as he was previously earning. While the position is an important one, the court does not perceive any significant career enhancement or relocation that indicates an implied contract was formed.

## Public Policy Exception

As pointed out by Zerbe, the city chose to essentially sidestep the issue of whether the discharge under the facts pled violated a legally protected public interest or policy.

Pennsylvania common law permits a tort cause of action for wrongful termination where a significant and recognized public policy is contravened. *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974). To recover, the employee must show that there has been a "violation of a clearly mandated public policy which strikes at the heart of a citizen's social rights, duties, and responsibilities." *Paul v. Lankenau Hospital,* 375 Pa. Super 1, 14, 543 A.2d 1148, 1155 (1988).

In *Geary,* an at-will employee was terminated for notifying the employer of serious defects in several products marketed by the employer. In affirming the case's dismissal, the court determined that the em-

ployee bypassed the employer's chain of command and created a nuisance. The court, however, indicated that in some circumstances an employee could have a cause of action for wrongful termination. The court stated:

"It may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of the areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened . . . We hold only that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at-will has no right of action against his employer for wrongful discharge." *Id.* at 184-5, 319 A.2d at 180.

Since *Geary,* actions for public violations have been recognized in Pennsylvania for termination for serving on a jury, *Reuter v. Fowler & Williams Inc.,* 255 Pa. Super. 28, 386 A.2d 119 (1978); refusing administration of a statutorily prohibited polygraph examination, *Perks v. Firestone Tire & Rubber Co.,* 611 F.2d 1363 (3d Cir. 1979); refusing to participate in an allegedly illegal price-fixing scheme, *McNulty v. Borden Inc.,* 474 F.Supp. 1111 (E.D. Pa. 1979); terminating to substantially reduce pension benefits, *Shipkowski v. U.S. Steel Corp.,* 585 F.Supp. 66 (E.D. Pa. 1983); refusing to commit a criminal offense, *Hansrote v. American Industrial Techniques Inc.,* 586 F.Supp. 113 (W.D. Pa. 1984), aff'd. 770 F.2d 1070 (3d Cir. 1985); retaliation for filing a worker's compensation claim, *Rettinger v. American Can Co.,* 574 F.Supp. 806 (M.D. Pa. 1983); disclosure of self-dealing under federal securities statutes, *Klages v. Sperry Corp.,* 118 L.R.R.M.

(BNA) 2463 (E.D. Pa. 1984); and complaints about occupational hazards to a state agency, *Klipshuk v. Delaware County Soc.,* 672 F.Supp. 542 (E.D. Pa. 1986).

Public policy violations have not been found where employees have performed their duties properly, *Marsh v. Boyle,* 366 Pa. Super. 1, 530 A.2d 491 (1987); for disagreeing with employer policy makers and disrupting administrative operations, *Rinehimer v. Luzerne County,* 372 Pa. Super. 480, 539 A.2d 1298 (1988); for believing that unspecified statutes were violated, *McGonagle v. Union Fidelity Corp.,* 383 Pa. Super. 223, 556 A.2d 878 (1989); for refusing to 'rehire an employee after acquittal of criminal charges, *Cisco v. United Parcel Services,* 328 Pa. Super. 300, 476 A.2d 1346 (1984); or for associating at employees functions with members of the opposite sex that were not the employee's spouse, *Staats v. Ohio National Life Insurance Co.,* 620 F.Supp. 118 (W.D. Pa. 1983).

In the present case Zerbe alleges he was discharged as an act of retaliation against him for his cooperation with certain investigative agencies. He also asserts that as a result of the information provided the Department of Community Affairs froze all state funds designated for the city.

What constitutes clearly mandated public policy? There is no precise definition of the term. In general it can be said that public policy concerns what is right and just and what affects the citizens of the state or community collectively. Although there is no clear line of demarcation dividing matters of public policy from matters purely personal, a survey of the cases cited shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed. As a code enforcement officer, Zerbe was charged with

the responsibility of insuring that the Building, Lumber and Electrical Codes were complied with.

Clearly there is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of our citizens. Additionally, employees such as Zerbe have a responsibility to inform the "appropriate officials" including, where relevant, law enforcement, regarding any violation that falls within the ambit of his responsibilities. Unlike *Geary, supra,* there is nothing in the complaint to indicate whether Zerbe bypassed normal operations. The facts as alleged seem to suggest he, unlike the employee in *Geary,* followed the chain of command. Also significant is the fact that Zerbe is arguably an expert in the area of code enforcement, knows the various regulations, and allegedly knew the regulations relevant to the Chestnut Street Rehabilitation Project. Also, while the complaint may be less specific than it could be, it informs the City of Sunbury of the crux of the claim, which in effect alleges Zerbe was dismissed for performing his responsibilities as code enforcement officer or providing information to the Sunbury Police Department as allegedly directed by the Inspector General's Office.

Given the aforegoing, and in consideration of the facts alleged, as well as the principle that the court must resolve all doubt in favor of overruling a demurrer, the public policy averments of count I shall be allowed.

*Count II Should Be Dismissed Involving Intentional Infliction of Emotional Distress and Punitive Damage Since Zerbe Fails to Set Forth the Essential Elements of a Claim for Tort*

Initially, the court agrees the Zerbe complaint improperly makes a claim for punitive damages

against a municipality. In *Feingold v. SEPTA,* 512 Pa. 567, 517 A.2d 1270 (1986) the court held that an award of punitive damages against an agency of the Commonwealth was inappropriate. *Id.* The court followed *Newport v. Facts Concerts Inc.,* 453 U.S. 247, 69 L.Ed. 2d 616, 101 S.Ct. 2748 (1981) in reasoning that the windfall to a plaintiff should be prohibited since the end result is a burden upon a taxpayer.

In *Township of Bensalem v. Press,* 93 Pa. Commw. 235, 501 A.2d 331 (1985) the court discussed the application of the rule on punitive damages with respect to a municipality. The court agreed with "great weight of authority" and found that punitive damages cannot be imposed against a municipal subdivision. *Id.,* citing *Feingold v. SEPTA,* 339 Pa. Super. 15, 488 A.2d 284 (1985). Also, see, McQuillen, 18 *Municipal Corporations* §53.18(a), at 220.

Count II, based on intentional infliction of emotional distress as defined by the Restatement (Second) of Torts, §46(1) (1965) occurs when "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." This has been accepted as reflecting the law in Pennsylvania. See *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company,* 494 Pa. 501, 431 A.2d 966 (1981); *Clay v. Advanced Computer Applications Inc., supra; Reiner v. Tien,* 356 Pa. Super. 192, 514 A.2d 566 (1986); the requisite conduct is described in comment (d) as being:

"So outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an

average member of the community would arouse his resentment against the actor and lead him to exclaim 'Outrageous!' ''

When such allegations are raised in a complaint, ''[i]t is for the court to determine, in the first instance, whether the defendant's conduct may be regarded as so extreme and outrageous as to permit recovery.'' Restatement (Second) of Torts, §46(1), comment h, (1965), cited with approval in *Reimer v. Tien, supra;* and *Dawson v. Zayre Department Stores,* 346 Pa. Super. 357, 499 A.2d 648 (1985).

Plaintiff has averred in his complaint that the actions of the defendant city were intentional and allegedly in retaliation for his action in cooperating with an investigative agency or agencies. He also alleged he was greatly distressed emotionally. While the court agrees the facts in support of the claim are sparsely pled, the court will await Zerbe and his physician's testimony concerning his allegedly deteriorating emotional condition and whether there is a causal relationship to his termination.

*Count III Should Be Dismissed Since Zerbe Demands in Excess of $10,000 for Unused Sick Pay and Vacation Time Without Setting Forth a Contract or Statute That Would Entitle Him to an Amount in Excess of Treble Damages*

In his complaint, Zerbe alleges a loss of $2,746.31 for unused sick pay and compensation time. This is essentially a compensation matter and despite the wherefore clause demand for $10,000 plus which may have been an inadvertence, it will remain only as a claim for a sum certain.

*Count IV Involving an Alleged Violation of the Whistleblower Law Should Be Dismissed Since Zerbe Continues to Fail to Set Forth the Specific Reports Made, Time of Making the Reports, and the Individuals Who Received the Reports*

Title 43 Pa.C.S. §1422 defines a "whistleblower" as:

"A person who witnesses or has evidence of wrongdoing or waste while employed and who makes a good faith report of the wrongdoing or waste, verbally or in writing, to one of the person's superiors, to an agent of the employer or to an appropriate authority."

Further "wrongdoing" is defined as a violation which is not of a merely technical or minimal nature of a federal or state statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer.

In the court's view, the allegations in this count are sufficient. While the facts under this count are somewhat lacking in specificity, the trial court has broad discretion in determining the amount of detail that must be averred since the standard of pleading set forth in rule 1019(a) is incapable of precise measurements. Further, the facts recited are not to be read in isolation but in conjunction with all other facts recited in the complaint. *Local No. 163, International Union of United Brewery Workers v. Watkins,* 417 Pa. 120, 207 A.2d 776 (1965). Also, a party is not required to plead purely evidentiary matters. *Local No. 163, supra.*

*Count V of the Complaint Should Be*
*Dismissed Since Zerbe Was Merely an*
*Employee in the Building Inspection*
*Office and Not the Code Official*
*Entitled to a Hearing*

The issue herein is whether under the BOCA Code, Zerbe is entitled to a hearing before removal from office. Under the code, the executive official in charge of the Code Office has a right to a hearing. It is the contention of the city that the Director of Public Safety (Michaels) as the "executive official" in charge of the Code Office is the only one entitled to a hearing. The Code of the City of Sunbury, §3-1 provides that the executive and administrative powers, authority, and duties of the City of Sunbury, are distributed into and among the five executive departments. Section 3-4 of the code, *supra* provides that the Department of Public Safety, which includes Housing, Building, Lumber and Electrical Codes, is one of the executive departments. Section 3-11 provides that executive shall have the right to hire and dismiss all persons necessary to the efficient operation of his department.

It is clear Michaels is the executive official in charge of the Code Office. The court is uncertain as to why a part-time elective official would be entitled to a discharge hearing and not the full-time code enforcement officer who is evidently duly appointed by the mayor and City Council. However, given the court's ruling that Zerbe's discharge falls within the public policy exception to discharge at will, we will dismiss this count since the outcome of any hearing would probably bring us back to the status quo.

*Count VI of the Complaint Should Be Dismissed*
*and Zerbe Should Be Denied the Protection*
*Provided by the Civil Service Laws Since He*
*Never Took a Civil Service Examination, and*
*He Was Never Appointed to His Job*
*According to the Civil Service Law*

Zerbe does not dispute he never attained the status of a Civil Service employee, although the court agrees the position of code enforcement officer is a job position protected under the Civil Service provision of the Third Class City Code. Unfortunately, an employee must *be* a Civil Service employee in order to receive the benefits of Civil Service, such as a hearing. See *Manning v. Civil Service Commission,* 387 Pa. 176, 127 A.2d 599 (1957).

· In *Hecknauer v. Coder,* 32 Pa. Commw. 308, 379 A.2d 638 (1977) the court affirmed Judge Greevy's decision in a case similar to the case at bar. In *Hecknauer,* the mayor of Williamsport fired an employee who was the city zoning officer and the code administrator. The employee was not in a civil service job.

The *Hecknauer* court held that the employee could be properly discharged and that he was not entitled to a hearing. *Id.* at 310-1, 379 A.2d at 640.

In *Municipality of Penn Hills, Appellant v. Municipality of Penn Hills Personnel Board/Civil Service Commission and Benjamin Westwood,* 87 Pa. Commw. 552, 487 A.2d 1048 (1985), the court summarized the law involving an employee's right to Civil Service protection when the employee was not properly appointed according to Civil Service Law. The court agreed with *Manning v. Millbourne Borough Civil Service Commission, supra,* and *Detoro v. Pittston,* 344 Pa. 254, 25 A.2d 299 (1942) that an

employee must be properly appointed according to Civil Service law prior to receiving the guarantee of a hearing prior to a change in position or dismissal.

## *Zerbe's Request for a Jury Trial for Counts IV through VI Should Be Stricken Since the Claims Are Based Upon Statutory Rights that Did Not Exist at the Time of the Adoption of the Constitution or at Common Law and They Are Equitable in Nature*

This issue is also addressed by plaintiff in his preliminary objection to plaintiff's preliminary objection. Counsel do not dispute there is no right to a jury trial for the Whistleblower, BOCA Code and Civil Service allegations. The issue is whether defendant's failure to raise such in his initial set of preliminary objections resulted in a waiver of a right that did not initially exist.

Initially, the relief requested through the Whistleblower Law, 43 P.S. §1421 involves a statutory remedy passed by the legislature in 1986. The statutory right to a trial for this type of alleged violation did not exist at common law when Pennsylvania adopted the Constitution. Further, the remedies offered in section 1424 of the Whistleblower Law do not provide a jury as an option for either party. Rather, the statute refers to injunctive relief or damages based upon the discretion of the court.

An analogous situation arose in *Murphy v. Cartex Corp.*, 377 Pa. Super. 181, 546 A.2d 1217 (1988) involving the application of the Pennsylvania Human Relations Act, 43 P.S. §951 et seq. In *Murphy,* an epileptic employee was suspended from his employment. A part of his claim heard by a jury involved a violation of the PHRA.

The *Murphy* court held that the court of common pleas erred by presenting the PHRA portion of the case to a jury. The court based its decision on

reasons applicable to the Whistleblower Law in the Zerbe case. First, the plaintiff did not have a constitutionally protected right to a jury trial since the rights conferred by statute did not exist at the time the Constitution was adopted. *Id.* Second, the statute refers to legal relief that is equitable in nature, i.e., enjoining further unlawful discriminatory practice, ordering reinstatement of hiring of individuals, ordering the upgrading of employees, awarding back pay. *Id.*

It should also be noted that both the PHRA and the Whistleblower Law give the court authority to award damages. In the PHRA the language reads "any other legal or equitable relief as the court deems appropriate." In the Whistleblower Law, the language reads as follows:

"A court, in rendering a judgment in an action brought under this act, shall order, as the *court* considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, *actual damages* or any combination of these rights."

The Whistleblower Law does not go any further than the PHRA in providing a right to trial by jury. Moreover, the Whistleblower Law never refers to a jury decision but rather the decision of the court with primarily equity powers.

While we have dismissed counts V and VI, the same argument involving the Whistleblower Law also applies to the alleged BOCA Code violation and the alleged Civil Service Law violation. These laws were not in effect at the time of the adoption of the Constitution, and the legislature did not provide for a statutory right to a jury trial. As to the failure to raise the issue in the first set of defendant's preliminary objections, no citation relevant to the precise issue was provided. Since all of the above are

statutory remedies, in the court's view the absence of a legislative statement that a failure to object creates such a right, is dispositive of the issue.

For all of the aforementioned reasons we enter the following

### ORDER

And now, January 24, 1990, for all of the reasons stated in the foregoing opinion, the plaintiff's demurrer with respect to counts V and VI is granted and no right to jury trial shall exist as to count IV only.

It is further ordered that the demurrer to count I is granted as to the existence of an employment agreement, and denied as to the public policy exception; the demurrer to count II involving punitive damages is granted and denied as to the intentional infliction of emotional distress; the demurrer to count III is granted as to treble damages only; and the demurrer as to the Whistleblower Law is hereby denied. Defendant shall file an answer within 20 days from the date of this order.