579 A.2d 985

**William C. COSTOPOULOS, Appellant,**

**v.**

**Jack I. GIBBONEY; James Corbett; C. Joseph Rehkamp; County of Perry and The Commonwealth of Pennsylvania, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 1989.

Decided July 26, 1990.

264

Lewis H. Markowitz, with him, Lawrence S. Markowitz, Markowitz and Markowitz, York, for appellant.

Calvin R. Koons, Sr. Deputy Atty. Gen., with him, John G. Knorr, III, Chief Deputy Atty. Gen., Chief of Litigation Section, and Ernest D. Preate, Jr., Atty. Gen., for appellees.

Before CRUMLISH, Jr., President Judge, and CRAIG, DOYLE, COLINS, PALLADINO, McGINLEY and SMITH, JJ.

COLINS, Judge.

William C. Costopoulos (appellant) appeals from an order of the Court of Common Pleas of Perry County (trial court) which granted the cross-motion for judgment on the pleadings of Jack I. Gibboney, James Corbett, C. Joseph Rehkamp, Perry County, and the Commonwealth of Pennsylvania (appellees).[1] We affirm.

In October of 1976, the appellant secured an acquittal in Perry County for Dennis Klinger who was charged with the murder of his mother. While at a victory party celebrating the acquittal of his client, the appellant allegedly told Lovena Salvaggio that Klinger had, in fact, murdered his mother and that Klinger must lie about this murder. Salvaggio informed the State Police and the Perry County District Attorney's Office of this conversation and appellees Corbett and Gibboney conducted an investigation. This investigation resulted in the arrest of the appellant who was charged with 12 counts of tampering with witnesses, hindering apprehension, conspiracy to commit perjury, criminal subor-

1. Jack I. Gibboney and James Corbett are both Pennsylvania State Troopers. C. Joseph Rehkamp was the District Attorney of Perry County when this action was filed.

nation to commit perjury, and obstruction of administration of law or other governmental function.

Eleven of these charges were dismissed because they were filed in the wrong county. These eleven charges were never refiled and the remaining charge was eventually dismissed by a special prosecutor. Appellant then instituted this action, by summons, in February of 1979, for violation of his civil rights under 42 U.S.C. § 1983,[2] as well as a claim of false imprisonment, intentional infliction of emotional distress, and malicious prosecution.

A complaint was not filed until November 20, 1985. After discovery, the appellees filed a motion for summary judgment which was denied by the trial court. The appellant then filed a motion for partial judgment on the pleadings and the appellees filed a cross-motion. The trial court, on December 5, 1988, entered judgment on the pleadings against the appellant on all claims. 1 Pa.D. & C.4th 303.

■ On appeal, the appellant alleges that the trial court committed an error of law in holding that the appellees had qualified immunity under 42 U.S.C. § 1983 and that official immunity applied to the appellees. We will deal with these allegations or errors seriatim, keeping in mind that a motion for judgment on the pleadings is in the nature of a demurrer and all well-pled facts of the non-moving party are accepted as true, and review of a trial court ruling on such motion is limited to determining only whether the trial court abused its discretion or committed an error of law. *E–Z Parks, Inc. v. Philadelphia Parking Authority*, 110 Pa. Commonwealth Ct. 629, 532 A.2d 1272 (1987); *Agostine v. School District of Philadelphia*, 106 Pa.Commonwealth Ct. 492, 527 A.2d 193 (1987).

2. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ The appellant argues that the appellees did not have qualified immunity under 42 U.S.C. § 1983, relying on *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), to support this proposition. In *Harlow*, the United States Supreme Court held that State officials are entitled to qualified immunity in a 1983 action, unless their conduct violates clearly established constitutional rights of which a reasonable person would have knowledge. The appellant maintains that the State Troopers did not have probable cause to arrest him, thus, clearly violating his established constitutional rights. The appellant further suggests that the appellees had a personal vendetta in trying to punish him for securing the acquittal of Dennis Klinger. Moreover, he asserts that the appellees should not have relied on the statements of Lovena Salvaggio because she was mentally imbalanced.

The appellees counter by stressing that all of the actions of the State Troopers and District Attorney Rehkamp were in the scope of their employment, and that a reasonable person would have grounds to believe that the appellant had committed a crime because he informed a disinterested witness at a victory party that he told his client to lie in order to secure an acquittal. Ms. Salvaggio testified that the appellant told her:

> 'Dennis did it', and I said, 'Dennis did it?', and I said, 'When did you find out about this?', and he said, I think he said it was his first meeting with him, I'm not certain about that however, it was either one of his first meetings, but I think he said it was his first meeting with him that he admitted to him in the cell or wherever it is that an attorney meets their client in jail, I got the impression it was in jail. And he said after checking for bugging devices, he said, 'You know you can't tell a jury that, you'll have to lie.' He said, 'They'll send you to the chair for sure.' He said, 'If I get you off and they find out later, the only thing they could get you for would be perjury.' And then he also stated sometime in there, that this wasn't the first murder that Mr. Klinger committed.

██ Our review of the record leads us to agree with the trial court that a reasonable person could have believed that prosecution was proper in this matter. The State Troopers conducted an investigation only after being told by a disinterested witness that the appellant had advised his client to lie to secure an acquittal. The State Troopers arrested the appellant pursuant to an arrest warrant, the validity of which was never challenged. The appellant never denied making this statement and, if he was more cooperative, this litigation may have been unnecessary. The Commonwealth was also named as a party in this action; however, the Commonwealth is not a person subject to suit under 42 U.S.C. § 1983. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Rochester v. White*, 503 F.2d 263 (3rd Cir.1974).

We now must resolve the issue of whether the trial court committed an error of law in finding the appellees are entitled to official immunity. The appellant argues that the appellees have a duty to investigate crimes, and to uphold and fairly enforce the laws of this Commonwealth. Appellant maintains that since the State Troopers do not possess a policy-making function, official immunity does not apply.

> [T]raditionally immunity is granted to individuals who are vested with discretion, the purpose being to alleviate the fear that every policy decision will subject them to lawsuits.... [W]hen the nature of a public servant's decision 'may not be measured against a predictable standard of care, the possibility of litigation may tend to discourage the making of clear choices.'

*Township of Bensalem v. Press*, 93 Pa.Commonwealth Ct. 235, 244–45, 501 A.2d 331, 336 (1985) (*quoting DuBree v. Commonwealth*, 481 Pa. 540, 544, 393 A.2d 293, 295 (1978)) (citations omitted).

██ In *DuBree*, our Supreme Court abandoned the distinction between high and low official immunity in favor of a case-by-case determination of whether an individual is entitled to immunity. To be entitled to immunity depends upon whether an individual's duties are discretionary and

that decision, in turn, depends on whether his decisions can be measured by a predictable standard of care. A duty is discretionary if it involves judgment planning or policy decisions. It is not discretionary if it involves enforcement or administration of a mandatory duty at the operational level, even if professional expert evaluation is involved. *Township of Bensalem.*

 In this matter, the appellees conducted an investigation resulting in the determination that the appellant may have committed a series of crimes by telling his client to lie under oath. A reasonable person could have believed, as did the appellees, that after learning from Ms. Salvaggio that the appellant had told his client to lie, a crime possibly had been committed.

A police officer is given broad discretion when he is investigating the possible commission of a crime. Even though it is mandatory for a police officer to uphold and enforce the law, an officer is given wide discretion as to whether, in his judgment, a crime has been committed. The same discretion applies to a District Attorney who makes the judgment and policy decision of whether to prosecute an alleged act of criminal wrongdoing. Therefore, the fact that a predictable standard of care did not exist in the instant matter, precludes liability on the part of the appellees.

Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this 26th day of July, 1990, the order of the Court of Common Pleas of Perry County in the above-captioned matter is affirmed.

DOYLE, Judge, concurring.

Although I concur in the result reached by the majority, I do not agree that a police officer has the same discretion that is reposited in the office of district attorney. In the performance of his duties the law grants to the district

attorney wide discretion in the exercise of which he "acts in a quasi-judicial capacity," *Commonwealth ex rel. Spector v. Martin*, 426 Pa. 102, 232 A.2d 729 (1967). That is not the same discretion that a police officer has in the investigation of a crime. Thus, I disagree with the majority's reasoning on this point.

McGINLEY, J., joins in this concurring opinion.