Douglas R. SATTERFIELD, Plaintiff,

v.

BOROUGH OF SCHUYLKILL HAVEN, Borough Council of Schuylkill Haven, Alfred Rizzuto, in his individual and official capacities, Glenn Sattizahn, in his individual and official capacities, and Wayne Bowen, in his individual and official capacities, Defendants.

No. Civ.A. 96–CV–5916.

United States District Court, E.D. Pennsylvania.

July 7, 1998.

Stephen T. Carpenito, Ashland, PA, for plaintiff.

Donald E. Wieand, Jr., Lehigh Valley, PA, for defendants.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

### I. INTRODUCTION

The Plaintiff is an active member of the United States Army Reserves and the former Borough Manager of Schuylkill Haven. Defendant Borough of Schuylkill Haven (the "Borough") is a duly organized municipality under the laws of Pennsylvania. Defendant Borough Council of Schuylkill Haven (the "Borough Council") is a duly elected body existing under the laws of Pennsylvania. The remaining Defendants are members of the Borough Council.

The Plaintiff has asserted eleven causes of actions against the Defendants. These causes of action arise under both state and federal law and relate to the circumstances under which the Plaintiff was removed from his job as Borough Manager of Schuylkill Haven. Jurisdiction is appropriate under 28 U.S.C. §§ 1331 and 1343, and 38 U.S.C. § 4323.

### II. BACKGROUND

#### A. Factual History

##### 1. Contracts and Ordinances Relating to Plaintiff's Employment

The Plaintiff was originally hired by the Borough as the Assistant Borough Manager, effective August 1, 1989. In April 1991, he became the Borough Manager. Deposition

of Douglas R. Satterfield taken April 14, 1997 ("Satterfield Dep. I") at 21. At the time the Plaintiff became Borough Manager, Borough Ordinance 703 was in effect. This ordinance provided:

> The Manager may be removed at any time, for just cause, by a majority vote of all of the members of the Borough Council after a hearing. At least ten (10) days prior to any hearing, the Borough Council shall furnish the Manager with a written statement of the reasons for his intended removal. If the Borough Council elects to terminate the services of the Borough Manager, he shall be given at least thirty (30) days notice in writing of such termination.

Plaintiff's Exhibit 3.

On February 14, 1992, the Plaintiff and Borough executed an Employment Agreement which read, in relevant part:

> 1.1.... After the initial 1.5 year term, this Agreement shall be renewed automatically for successive terms by one year each, unless the Borough Council or Employee gives contrary written notice to the other not less than ninety days in advance of the date on which this Agreement would otherwise terminate....
>
> 7.1 The Borough shall have the right, at any time upon prior written notice of termination satisfying the requirements of Section 7.5, to terminate Employee for just cause.

Plaintiff's Exhibit 4 §§ 1.1, 7.1. The Employment Agreement was extended to cover the period through June 30, 1995. Plaintiff's Exhibit 5.

In April 1995, Borough Ordinance 703 was repealed by the Borough Council and replaced by Borough Ordinance 944. The new Ordinance provided, "The Borough Manager may be terminated at any time for just cause after a hearing.... At least ten (10) days prior to the hearing, the Borough Council shall furnish the Borough Manager with a written statement of the reasons for the proposed termination ." Plaintiff's Exhibit 9 § 3. On March 9, 1995, the Plaintiff was informed that his contract, which was set to expire on June 30, 1995, would not be renewed and that he would be employed subject to Ordinance 944 as of July 1, 1995. Plaintiff's Exhibit 10.

On March 6, 1996, the Borough Council adopted Ordinance 953, repealing Ordinance 944. Ordinance 953 stated, "The Borough Manager shall serve in such position at the discretion of the Borough Council unless and until terminated by resolution upon a majority vote of all members of the Borough Council." Plaintiff's Exhibit 11 § 2.

### 2. Plaintiff's Military Activity

The Plaintiff has been a member of the Army Reserves since 1976. He currently holds the rank of major. As a reservist, the Plaintiff is required to participate in training exercises for one weekend each month and an additional fourteen days per year. Defendant Rizzuto felt that seven weeks (35 work days—15 days military leave plus 20 municipal vacation days) paid leave was excessive and expressed this opinion to others. *See* Deposition of Alfred Rizzuto taken April 4 and 14, 1997 ("Rizzuto Dep.") at 330–331; Deposition of John Pugh taken April 17 and 21, 1997 ("Pugh Dep.") at 210.

### 3. Plaintiff's Request for Additional Vacation Days

On May 1, 1995, the Borough Council recommended giving the Plaintiff an additional five days vacation. On May 4, 1995, the Plaintiff sent the Borough Council a memorandum requesting an additional ten vacation days, rather than five, and an additional two personal days, thereby bringing his total vacation and personal days to the same level as those of the Assistant Borough Manager. Plaintiff's Exhibit 16. On May 10, 1995, the Borough Council discussed the Plaintiff's request in its monthly meeting. The minutes of the meeting reflect that:

> A discussion was held regarding the Borough Manager's request for 12 additional vacation days. Council member Rizzuto stated that the Borough Manager already receives 15 days military leave. The Solicitor explained to Council that Pennsylvania law prohibits discrimination against an employee because he is in the Reserves.

After some additional discussion, the following motion was made: Resolution giving the Borough Manager, Douglas R. Satterfield, five additional vacation days. Messr/Bolkovich. On roll call Pugh, Rizzuto and Sattizahn voted no. The motion carried. This brings his total vacation days to 20 days.

Plaintiff's Exhibit 17.

### 4. Termination of Plaintiff's Services

On February 23, 1996, the Plaintiff was ordered to two weeks of annual training. Plaintiff's Exhibit 20. On March 14, the Borough Council was notified by the Plaintiff's Commanding Officer that the Plaintiff's training had been extended to March 31, 1996, for a total of 38 days. Plaintiff's Exhibit 21. The Plaintiff returned to work on April 1, 1996. On April 3, 1996, upon the conclusion of its regularly scheduled meeting, the Borough Council met in executive session. There is some dispute as to what was discussed in this meeting, but it is clear that the Plaintiff was fired from his position as Borough Manager at that time by a vote of six to one.

### 5. Explanations for Plaintiff's Termination

The Plaintiff was not put on notice that his termination from employment would be an issue at the April 3, 1996 meeting. No notes were taken during the executive session. According to the Plaintiff, four issues were discussed as grounds for termination during the executive session: (1) a 10% discount on the water rate for Pottsville Bleach and Dye; (2) an electric rate increase for the school district; (3) alleged paper products overspending; and (4) Council member John Pugh's assertion that the Plaintiff had changed numbers. See Plaintiff's Answer to Defendants' Interrogatory 21.

In answer to Plaintiff's Interrogatory No. 22, the Defendants listed the following reasons as grounds for the Plaintiff's termination:

Borough Council terminated Plaintiff's employment as the result of an accumulation of incidents over the years, including Plaintiff's management style and his inability to work with the current members of Borough Council. The major items of contention were (1) the loss of the Legislative Initiative grant, (2) the refund of the rate increase to the School District, (3) Plaintiff's insistence on hiring a meter reader for reasons which were not accurate, (4) the PUC rate increase rejection and (5) Plaintiff's incorrect calculation of the North Mannheim Township Authority rate.

Plaintiff's Exhibit 24 No. 22.

In response to Plaintiff's Interrogatory No. 21 (requesting a list of all incidents where the Plaintiff was guilty of misconduct or failure to perform his duties), the Defendants submitted a list of eleven incidents. The first five incidents are the same as those allegedly relied upon at the executive session. The remaining six include: (6) Plaintiff's allegedly inaccurate revenue projections, (7) alleged paper products overspending, (8) alleged underbilling of Pottsville Bleach & Dye Company, (9) alleged purchase of used recycling containers at a much higher price than new ones available under a state grant program, (10) allegedly inappropriate involvement with the Army Corps of Engineers involving a proposed flood wall, (11) alleged cooperation with dispatchers in opposing the Borough County's recommendation to join the county's communication system. Plaintiff's Exhibit 24 No. 21. These six items apparently were not raised at the executive session. Rizzuto Dep. at 271–272.

Defendant Rizzuto testified that the loss of a Legislative Initiative Grant and the issue of paper products overspending were discussed in the executive session. Rizzuto Dep. at 185, 274. Council member Pugh recalled raising the issue of the legislative grant. Pugh Dep. at 155, 161. Council member Christopher Reed could not remember any specific issues being raised. Deposition of Christopher Daniel Reed taken January 2, 1997 ("Reed Dep.") at 57–58. When Defendant Bowen was asked to identify the reasons for the Plaintiff's termination, he made reference to the loss of the legislative grant, the failure to implement the electric rate increase, and the purchase of paper products. Plaintiff's Exhibit 25. Defendant Sattizahn had no independent knowledge of the rate

increase to the school district, the loss of the Legislative Initiative Grant, the alleged miscalculation of the North Mannheim Township rate, the Pottsville Bleach & Dye rate discount, or the PUC water rate rejection. Deposition of Glenn Sattizahn taken April 17 and 25, 1997 ("Sattizahn Dep.") at 8–9, 13, 16–17, 24, 29–30, 60, 94, 96.

Defendant Sattizahn also testified that Defendant Rizzuto and Mr. Pugh raised the issues and did most of the talking at the executive session. Sattizahn Dep. at 139–141. No documents were made available to Council members at the time, nor were any witnesses brought forth. Rizzuto Dep. at 272–273. At the time of the executive session, there was a possibility that the Plaintiff would be called to active duty in Bosnia for six months. This may have been discussed at the executive session. Rizzuto Dep. at 370–371. In the public session following the executive session in which the Plaintiff was terminated, no reasons were given for the termination. Deposition of Douglas R. Satterfield taken August 12, 1997 ("Satterfield Dep. II") at 121.

In a memorandum dated May 12, 1997, the Borough Solicitor, at the request of the Borough Council, prepared a list of reasons for the termination for public distribution. The memo listed nine reasons, one of which (alleging selective enforcement of Borough ordinances) had not appeared on the list of eleven incidents provided by the Defendants in their response to Plaintiff's Interrogatory No. 21. Plaintiff's Exhibit 27. This memo was released one week prior to the primary election for Borough Council positions, in which the Plaintiff was a candidate.

Prior to April 3, 1996, the Plaintiff had never been reprimanded or disciplined for any matter while serving as Borough Manager, either orally or in writing. *See* Transcript of 12/5/96 preliminary injunction hearing at 56.

### 6. Relevant Conduct Subsequent to Plaintiff's Termination

In a joint effort, undertaken as part of their respective campaigns for seats on the Borough Council, Defendants Sattizahn, Bowen, and Rizzuto distributed a flyer which made mention of the Plaintiff:

**Some facts about Doug Satterfield and the the [sic] Satterfield v. Schuylkill Haven Borough Council lawsuit:**

Borough Council voted 6 to 1 to terminate Mr. Satterfield on April 3, 1996 because of poor job performance. Council did ***not*** fire him because of his service in the military.

Mr. Satterfield never had an employment contract when he was terminated in April 1996. In March of 1995 Borough Council voted not to renew his employment contract because it conflicted with the Borough's ordinance that governed the Borough manager's position. In February of 1996, Borough Council voted to revise the existing ordinance because it violated a State Supreme Court Case decision that required municipalities to employ municipal managers under an "at will" status. "At will" means the employer (Council) can hire and fire management at will. No reasons are required for Council to terminate Borough management.

During the 1996 injunction hearing, Mr. Satterfield testified that he had been seeking employment with another Borough in 1995. In fact in 1995, Mr. Satterfield's [sic] was also actively seeking employment at a local university and at a non profit corporation. **If he loves the Borough so much, why did he want to quit his position as Schuylkill Haven's Borough Manager?**

In April of 1996 during a police contact [sic] arbitration hearing, Mr. Satterfield voluntarily testified on behalf of the Borough Police Union and against the Borough. **If he loves the Borough so much, why did he do this?**

**The entire truth concerning this matter will come out within the next few months. Borough Council's legal counsel has advised us to remain silent to protect the Borough against further legal action. The above information has been heard during legal proceedings, therefore can be released [sic]. Please do not rely on the press to get your information.**

Plaintiff's Exhibit 28 (emphasis in original). This flyer was mailed directly to residents of Schuylkill Haven by the individual Defendants in anticipation of primary elections for Borough Council.

## B. Procedural History

The Plaintiff filed his complaint in federal court on August 26, 1996. In November, he moved for and was granted leave to file an amended complaint. On November 14, 1996, the Plaintiff filed a motion for a preliminary injunction, which was denied after a hearing on December 5, 1996. The Plaintiff's First Amended Complaint was filed on January 6, 1997. On June 28, the Plaintiff moved for and was granted leave to file another amended complaint, adding two additional defendants. The Plaintiff's Second Amended Complaint (the "Complaint") was filed on August 20, 1997.

The Defendants filed their Motion for Summary Judgment ("Defendants' Motion") on January 5, 1998. The Plaintiff filed his Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Response") on February 27, 1998. The Defendants filed their Reply Brief in Support of Defendants' Motion for Summary Judgment ("Defendants' Reply Brief") on March 27, 1998, and the Plaintiff filed his Brief in Opposition to Defendant's [sic] Reply Brief ("Plaintiff's Reply Brief") on April 7, 1998.

## III. DISCUSSION

The Defendants argue that all of the Plaintiff's claims against the Borough Council should be dismissed because the Borough Council is not an entity amenable to suit. Next, the Defendants assert that all claims against the individual Defendants in their official capacities are indistinguishable from claims against the Borough itself, and should therefore be dismissed because they are redundant. The Defendants then make individual arguments for summary judgment based upon each cause of action advanced by the Plaintiff.

We will first outline the standard which applies to the Defendants' Motion. We will then address the Defendants' argument for dismissing all counts against the Borough

Council. Next, we will consider the Defendants' position regarding the dismissal of all counts against the individual Defendants in their official capacities. We will then consider the Defendants' individual arguments opposing the Plaintiff's due process, First Amendment, equal protection, Uniformed Services Employment and Reemployment Rights Act ("USERRA"), breach of contract, defamation and punitive damages claims.

## A. Standard for Summary Judgment

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. 2505. All inferences must be drawn and all doubts resolved in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

On motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record which it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *Id.* at 321 n. 3, 106 S.Ct. 2548 (*quoting* Fed.R.Civ.P. 56(e)); *see also First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence sufficient to support a jury finding in its favor. *See Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505. This is the

standard under which we will review the Defendants' Motion in this case.

## B. Claims Against the Borough Council

The Federal Rules of Civil Procedure require that,

> When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, the party desiring to raise the issue shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

Fed.R.Civ.P. 9(a).

The Defendants have satisfied their burden under this rule by alleging that the Borough Council is not a "political subdivision" as defined by Pa.R.Civ.P. 76, which defines the term to include "any county, city, borough, incorporated town, township, school district, vocational school district or county institution district." The Defendants cite *Glickstein v. Neshaminy Sch. Dist.*, 1997 WL 660636 (E.D.Pa.1997), for the proposition that only the Borough qualifies as a political subdivision subject to suit under Pa.R.Civ.P. 76 and 2102(b). The Defendants also argue that the inclusion of the Borough Council is redundant, as the Borough would ultimately bear the responsibility for any judgment against the Borough Council.

Surprisingly, the Plaintiff's only response to this position is to say, "No argument is made herein by Plaintiff." Plaintiff's Response at 20. Because the Plaintiff has failed to scrutinize the Defendants' position, we will, reluctantly, undertake this task for him.

The question of whether or not the Borough Council is capable of being sued is an interesting one. It seems unlikely that the Borough Council could be sued in state court, given the limited scope of Pa.R.Civ.P. 76. However, Fed.R.Civ.P. 17(b)(1) states "that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States." *See also United Mine Workers of America v. Coronado Coal Co.*, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, (1922). The parties have presented no evidence which would help us to determine whether or not the Borough Council would qualify as such an "unincorporated association." And while several federal courts in this state have allowed suits to proceed against borough councils, we have not been able to find any case which specifically addresses the capacity issue. *See e.g., Giles v. Dunmore Borough Council*, 1997 WL 129308 (M.D.Pa.1997); *Matlock v. Pen Argyl Borough, Pen Argyl Borough Council, et al.*, 1996 WL 101587 (E.D.Pa.1996); *Sager v. Burgess and Borough Council of Pottstown, et al.*, 350 F.Supp. 1310 (E.D.Pa.1972). Fortunately, the Defendants have argued that the Borough Council is also a redundant party in this case. Because the Defendants are entitled to summary judgment on the strength of this argument, we need wade no further into the choice-of-law quagmire.

We find that the Borough Council is a redundant party in this case, as the Borough itself (a named Defendant), would ultimately be liable for any judgment entered against the Borough Council. *See Glickstein*, 1997 WL 660636. Therefore, we will grant this portion of the Defendants' Motion and dismiss all claims against the Defendant Borough Council. In doing so, we wish to make it clear that this dismissal in no way prejudices the right of the Plaintiff to pursue his claims based upon the misconduct of the Borough Council. However, since the Borough itself will be directly liable for any misconduct on the part of the Borough Council, the inclusion of both entities as Defendants is unnecessary.

## C. Claims Against the Individual Defendants in their Official Capacities

The Defendants next argue that the claims against the individual Defendants in their official capacities should be dismissed because they are redundant. The Defendants cite *Kenny v. Whitpain Township*, for the proposition that a public official "in his official capacity, is legally indistinct from the

municipality for which he serves." 1996 WL 445352 at *3 (E.D.Pa.1996), *citing Brandon v. Holt,* 469 U.S. 464, 471–473, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).

The Plaintiff's response does not address the Defendants' argument. The Plaintiff merely asserts that "public officials can be found liable in their individual capacity under a Section 1983 claim.... Therefore, the claims against the individual defendants are not redundant but rather are separate and distinct causes of action and should be maintained." Plaintiff's Response at 21. The Plaintiff's reply is both technically correct and inapposite. The Defendants do not argue that the claims against the individual Defendants in their *individual* capacities are redundant, but that the *official* capacity claims are redundant, as the corresponding municipality is already a properly named defendant in the action.

In *Monell v. Department of Social Servs. of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities and other local government bodies may be sued pursuant to section 1983. In a subsequent decision, the Supreme Court wrote, "There is no longer a need to bring official-capacity actions against local government officials, for under *Monell,* local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham,* 473 U.S. 159, 169 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (internal citations omitted).

We believe that the official capacity suits against Defendants Rizzuto, Sattizahn and Bowen are unnecessary, "because they are essentially suits against the township, which is already a named Defendant." *Williams v. Lower Merion Township,* No. 94–CV–6863, 1995 WL 461246 at *3 (E.D.Pa. Aug.2, 1995). By bringing official capacity suits against the these three Defendants and against the Borough itself, the Plaintiff has essentially named the Borough as a defendant four times. Therefore, although we recognize that we are not required to do so, *see Crighton v. Schuylkill County,* 882 F.Supp. 411 (E.D.Pa.1995), we will exercise our discretion and grant the Defendants, Motion to dismiss the official capacity claims against Defen-

dants Rizzuto, Sattizahn and Bowen. In doing so, we emphasize that the suit against the Borough is premised upon the misconduct of its employees and that the Borough is liable for the misconduct of each Borough Council member acting in his or her official capacity. Therefore, granting the Defendants' Motion in this respect will not substantively affect the Plaintiff's claims.

## D. Due Process Claims

In his Complaint, the Plaintiff claims that he was deprived of a protected property interest when he was dismissed from his position as Borough Manager on April 3, 1996. Complaint at 18. In his Response to the Defendants' Motion, the Plaintiff adds a claim for deprivation of a protected liberty interest. We will consider the Plaintiff's property and liberty interest claims separately.

### 1. Property Interest

■ The Plaintiff alleges that he was deprived of a protected property interest when he was dismissed from his position as Borough Manager without notice and without the opportunity to defend himself at a hearing. The Defendants respond that the Plaintiff was an at-will employee, subject to dismissal at any time.

The Supreme Court has limited the circumstances under which public employment qualifies for constitutional due process protection based upon a property interest.

> The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits.... [T]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 576–77, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ A "legitimate claim of entitlement" *must be created by state law or by a similarly independent source. Id.* Therefore, when

a discharged public employee makes a due process claim based upon a property interest, courts will look to state law to determine whether the employee had a property interest in his employment. *Cooley v. Pennsylvania Housing Finance Agency*, 830 F.2d 469, 471 (3d Cir.1987). To demonstrate a protected property interest, the Plaintiff must show that he had a legitimate claim of entitlement to continuing employment as Borough Manager under Pennsylvania law.

In *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the Supreme Court held that constitutional due process protection did not extend to an at-will public employee who was terminated in accordance with applicable state law. The parties do not dispute that Pennsylvania is an at-will employment state. However, the Plaintiff argues, the at-will doctrine for public employees can be overcome by contract, ordinance, or state law. While the Plaintiff's argument has merit in a general sense, Pennsylvania has a specific statute governing the appointment and removal of borough managers. This statute reads:

> The council of any borough may, at its discretion, at any time, create by ordinance the office of borough manager and may in like manner abolish the same. While said office exists, the council shall, from time to time, and whenever there is a vacancy, elect, by a vote of a majority of all the members, one person to fill said office, **subject to removal by the council at any time by a vote of the majority of all the members.**

53 Pa. Cons.Stat. § 46141 (emphasis added).

The Plaintiff may have reasonably believed that his position was protected by the various ordinances enacted by the Council and by the contract he had executed with the Council. Nevertheless, the legislative enactment cited above negates any notion that the Borough had authority to enter into a binding employment contract with the Plaintiff or to otherwise limit its own authority to remove him under § 46141. *Skrocki v. Caltabiano*, 568 F.Supp. 703, 705 (E.D.Pa.1983); *see also Liotta v. Borough of Springdale*, No. 89–CV–1876, 1992 WL 448500, at *4 (W.D. Pa. June 30, 1992), *aff'd* 985 F.2d 119 (3d Cir.1993).

Section 46141 effectively prevented the Plaintiff from having a legitimate claim of entitlement to his job as Borough Manager. Therefore, the Defendants' Motion will be granted with respect to the Plaintiff's property right due process claim.

**2. Liberty Interest**

■ In his response memorandum, the Plaintiff alleges that he was deprived of a protected liberty interest because the Defendants distributed stigmatizing information regarding the reasons for his discharge. Plaintiff's Response at 27. The Defendants object to the inclusion of this cause of action: "At this stage of the proceedings, after the complaint has been amended twice, the parties have completed discovery, and Defendants have moved for summary judgment, it is inappropriate for Satterfield to introduce new theories of liability not properly raised in the pleadings." Defendants' Reply Brief at 1.

■ We agree with the Defendants on this point. The Fourth Cause of Action in the Plaintiff's Second Amended Complaint alleges that, "The actions taken by the Defendants violated the Due Process Clause of the United States Constitution as the Defendants **deprived the Plaintiff of property rights** without due process of law." Complaint at 18 (emphasis added). The Plaintiff had ample opportunity to claim a deprivation of a protected liberty interest in any of the three incarnations of the complaint he filed. By raising this claim for the first time in his response to the Defendants' motion for summary judgment, the Plaintiff failed to notify the opposing parties and the court of such a claim on a timely basis. The Plaintiff's failure assert a protected liberty interest due process claim before the completion of discovery, despite being given multiple opportunities to do so, prompts us to dismiss this claim. However, even if we were to find that the liberty interest claim was timely, we would dismiss this claim on its merits.

■ The Supreme Court has held that reputation alone is not an interest protected by the Due Process Clause. In addition, defamation (such as that alleged by the

Plaintiff) is only actionable under 42 U.S.C. § 1983 *if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the constitution. Paul v. Davis,* 424 U.S. 693, 701–712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

For reasons that will be discussed below, the Defendants are entitled to summary judgment on the Plaintiff's defamation claim. *See* discussion *infra* Part III.I. Furthermore, while there was undeniably a change in the Plaintiff's employment status, this status was not protected by state law or the constitution. On the contrary, state law explicitly denies that any such right exists. 53 Pa. Cons.Stat. § 46141. And while the Third Circuit has not decided whether something less than a true property interest, independently protected by the Due Process Clause, can satisfy the requirement of a "right or status" guaranteed by the Constitution, it is clear that some "concomitant infringement of a protected right or interest" is essential. *Ersek v. Township of Springfield,* 102 F.3d 79, 83 n. 5 (3d Cir.1996). The case of *Clark v. Township of Falls,* 890 F.2d 611 (3d Cir. 1989), involved a police lieutenant who· was allegedly defamed by various township officials. The Third Circuit, applying *Paul,* wrote,

> In this case, Clark has failed to show that defendants' defamatory remarks and actions were conjoined with the alteration or extinguishment of any interest created or protected by the Constitution or state law. As we held in the preceding section of this opinion, Clark had no property interest under state law in retaining the duties and privileges he had previously enjoyed as a lieutenant. Therefore, their loss could not constitute the alteration or extinction of any right or interest.

*Id.* at 620.

The *Clark* Court expressly declined to rule on whether a demotion in rank, coupled with a harm to reputation, would satisfy the requirement imposed by *Paul.* Nevertheless, we conclude that this requirement is not met in the case sub judice. The Plaintiff cannot establish that he had any protected interest whatsoever in retaining his job. The Plain-

tiff had no property interest under state law in retaining his employment as Borough Manager. *See* discussion *supra* Part III.D.1. Therefore, the "loss [of employment] could not constitute the alteration or extinction of any right or interest." *Clark,* 890 F.2d at 620.

The Defendants are entitled to summary judgment on the Plaintiff's claim that he was deprived of a protected liberty interest in violation of his right to due process. The Plaintiff failed to raise such a claim before the close of discovery, even though he was allowed to amend his Complaint twice. Even if the claim were timely, the Plaintiff has failed to present a claim for defamation upon which relief may be granted. Finally, even if the Plaintiff had presented a valid claim for defamation, he has failed to show that he was denied a right or status guaranteed by state law or the constitution.

Because no liberty interest or property right was violated in this case, no right to due process attached. Therefore, the Defendants are entitled to summary judgment on the Plaintiff's due process claims. Because we have reached this result on the merits of the claim, we need not consider the individual Defendants' argument that they are entitled to summary judgment on the grounds of qualified immunity.

### E. First Amendment Claims

The Plaintiff claims that the Defendants terminated his employment as Borough Manager in retaliation for his exercise of his First Amendment right to freedom of speech. The Defendants respond that the Plaintiff's speech was not a substantial motivating factor in the decision to end his employment, and that the speech in question does not merit First Amendment protection.

The Third Circuit has identified a three-step process to use when evaluating a § 1983 First Amendment claim. First, a plaintiff must show that the activity in question was protected. Second, the plaintiff must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action. Third, the defendant may defeat the plaintiff's claim by showing that the same

action would have been taken even in the absence of the protected conduct. *Watters v. City of Philadelphia*, 55 F.3d 886 (3d Cir. 1995).

### 1. Protected Speech Analysis

 The Plaintiff bears the burden of establishing that the speech at issue was protected. *See Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir.1993); *Czurlanis v. Albanese*, 721 F.2d 98, 103 (3d Cir.1983). This issue involves a matter of law, and is to be determined by the court upon consideration of "the content, form, and context of a given statement, as revealed by the whole record." *Watters*, 55 F.3d at 892, *citing Connick v. Myers*, 461 U.S. 138, 147–148, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

This protection analysis involves two subissues. First, the plaintiff must show that his or her speech addressed a matter of public concern. If the plaintiff does this, the burden shifts to the defendant to show that the employee's interest in expression on the matter was "outweighed by any injury the speech could cause to the interest of the state as an employer in promoting the efficiency of the public services it performs through its employees." *Watters*, 55 F.3d at 892, *citing Waters v. Churchill*, 511 U.S. 661, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994).

### a. Matter of Public Concern

In this case, the Defendants address eight specific instances which allegedly implicate the First Amendment. They then assume, without conceding, that the Plaintiff's speech pertained to matters of public concern. We have considered the speech at issue in the eight instances identified by the Defendants and the three instances identified by the Plaintiff (two of which overlap with those mentioned by the Defendants). On balance, we conclude that the Plaintiff has met his burden of demonstrating that material facts remain in dispute and that a reasonable jury could find for the Plaintiff on the basis of the evidence which has been presented.

The Supreme Court has indicated that a public employee's speech is protected when it relates "to any matter of political, social, or other concern to the community." *Con-*

*nick*, 461 U.S. at 146, 103 S.Ct. 1684. The Third Circuit has explained that "[i]t is the value of exchanges of information and ideas relevant to self-governance that entitles public concern speech to 'special protection.'" *Azzaro v. County of Allegheny*, 110 F.3d 968, 977 (3d Cir.1997). The Supreme Court, Third Circuit, and Eastern District of Pennsylvania have applied this standard in several cases. *See e.g., Azzaro, Id.* (public employee's complaints of sexual harassment were protected); *Green v. Philadelphia Housing Auth.*, 105 F.3d 882 (3d Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 64, 139 L.Ed.2d 26 (1997) (employee's presence at the bail hearing of an alleged organized crime boss was protected); *Watters*, 55 F.3d 886 (employee's remarks in a newspaper article regarding police department employee assistance program were protected); *Bedford v. Southeastern Pennsylvania Transp. Auth.*, 867 F.Supp. 288 (E.D.Pa.1994) (employee's complaint that agency physician abused a position of trust was protected); *Mraz v. County of Lehigh*, 862 F.Supp. 1344 (E.D.Pa.1994) (employee's notification of officials regarding potential waste in county budget was protected).

 The speech at issue in this case concerned issues such as: (1) alleged misuse of public property, (2) whether a building should be condemned because it posed a danger to the public, (3) whether certain information should be withheld from the public, (4) alleged discrimination on the basis of military status, (5) allegedly improper closed meetings of the Borough Council, (6) allegedly improper use of Borough work crews, and (7) implementation of Borough electoral ordinances. These issues, and the others identified by the parties, all relate to matters of "political, social, or other concern to the community." *Connick*, 461 U.S. at 146, 103 S.Ct. 1684. Many of the cited examples also involve "exchanges of information and ideas relevant to self-governance" and are thereby entitled to "special protection." *Azzaro*, 110 F.3d at 977. We find that the speech at issue did address matters of public concern. Therefore, we must next consider whether the Defendants' interest in maintaining a smooth working relationship with the Bor-

ough Manager outweighed the Plaintiff's interest in self-expression.

### b. Balancing Test

■ Once a plaintiff satisfies his or her initial burden, the burden then shifts to the defendant to show that its interest "in promoting the efficiency of the public services it performs through its employees" outweighs the plaintiff's interest in self-expression. *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). The government bears the burden of justifying the employee's discharge, "and that burden varies depending upon the nature of the employee's expression." *Watters,* 55 F.3d at 895. However, the Supreme Court has acknowledged that the government has "a freer hand in regulating the speech of its employees than it has in regulating the speech of the public at large." *Churchill,* 511 U .S. at 671, 114 S.Ct. 1878.

■ After considering the portions of the Plaintiff's speech which the Defendants allege undermined the working relationship between the Borough Manager and Borough Council, we find that the Defendants have not satisfied their burden. In the pertinent section of their Motion, the Defendants fail to identify any specific speech which may have disrupted the provision of public services. The Defendants' statement of facts references a few negatives remarks which the Plaintiff allegedly made against Defendant Rizzuto, but this falls far short of showing that the Plaintiff's speech was responsible for substantially undermining his working relationship with the Borough Council as a whole. While there is evidence that the relationship between the Borough Council and the Plaintiff at the time of his dismissal was less than functional, the Defendants have not made the required substantial showing the speech at issue impugned the integrity of the Borough Council or caused a complete breakdown in collaboration between the Borough Council and the Borough Manager. *See Watters,* 55 F.3d at 898–899. Therefore, we find that the Plaintiff's speech was entitled to First Amendment protection.

### 2. Motivating Factor Analysis

■ Having found that the Plaintiff's speech was entitled to First Amendment protection, we must now determine whether this speech was a motivating factor behind the decision to terminate the Plaintiff's employment as Borough Manager. In this, the second stage of our inquiry into the Plaintiff's § 1983 claim, the Third Circuit has made it clear that "the plaintiff has the burden of showing that the protected activity was a substantial or motivating factor in his termination." *Johnson v. Lincoln University,* 776 F.2d 443, 454 (3d Cir.1985), *citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

The Defendants argue that the Plaintiff has failed to provide any evidence which would link his protected speech with the Borough Council's decision to terminate his employment. This is not entirely correct. The Plaintiff has presented evidence from which a reasonable jury could infer that he was terminated because of the speech at issue. *See e.g.,* Satterfield Dep. I at 43–45 and Satterfield Dep. II at 130–131 (testimony that Borough Council members were upset that the Plaintiff filed a complaint with the Department of Labor). The Seventh Circuit Court of Appeals has written that "[s]ummary judgment generally is improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action." *Dey v. Colt Constr. and Dev. Co.,* 28 F.3d 1446, 1459 (7th Cir.1994). While we recognize that this decision is not binding upon us, we also recognize its acumen. Because the Plaintiff has presented some evidence that one or more Borough Council members may have had hostile feelings toward him and may have influenced the vote to terminate him, we will not dismiss his retaliatory discharge cause of action.

The Defendants also argue that the time which elapsed between the protected speech and the allegedly retaliatory termination is per se evidence that the speech was not a motivating factor in the termination. We are not persuaded by this argument. The Third Circuit has not adopted a bright line rule

that the passage of a certain amount of time precludes a finding that protected speech was a motivating factor behind adverse employment action. Although such a lapse may be a relevant factor in determining motivation, we feel that question is best left to a jury.

Additionally, the Plaintiff has provided some evidence that the opposition was insufficient to remove him from office until the new Borough Council members took office in early 1996. Therefore, the fact that the Plaintiff was not removed until April 3, 1996, does not imply that the protected speech had been forgiven or forgotten by the time of the Plaintiff's removal.

The Defendants argue that they are entitled to summary judgment on the Plaintiff's First Amendment claims because the Plaintiff's speech was not protected and because even if it were, it was not a motivating factor behind the decision to terminate the Plaintiff's employment. We find that the Plaintiff's speech was entitled to First Amendment protection. In addition, we find that sufficient evidence of discriminatory motivation exists to enable a reasonable jury to conclude that the protected speech was a substantial motivating factor in the Plaintiff's termination. Furthermore, as the case law cited above demonstrates, the Plaintiff's right to speak out on the issues identified by the parties was clearly established at the time of the alleged retaliatory termination. As such, the individual Defendants are not entitled to qualified immunity. For these reasons, the Defendants' Motion must be denied with respect to the Plaintiff's First Amendment claims.

## F. Equal Protection Claims

■ The Defendants next argue that the Plaintiff's claims under the Equal Protection Clause of the Fourteenth Amendment should be dismissed because USERRA provides an exclusive statutory remedy for anti-military discrimination. The Defendants also argue that the Plaintiff's termination was not based upon his military status, that his termination was rationally related to a legitimate state purpose, and that the individual Defendants are entitled to qualified immunity. The

Plaintiff's entire response to this portion of the Motion reads, "Plaintiff will not be filing a response hereto but is not in agreement with Defendant's [sic] arguments therein." Plaintiff's Response at 44.

We are baffled by this response and are at a loss to explain the Plaintiff's position. The Plaintiff's refusal to respond to the argument may suggest that he agrees that this claim should be dismissed, in which case he is obliged to withdraw the claim. *See* Fed. R.Civ.P. 11(b). Alternatively, the Plaintiff's response may be read to imply that he has a valid response to the Defendants' argument but is too lazy to present it. In this case, Plaintiff's counsel would be in violation of his responsibility to represent his client zealously. *See* Model Rules of Professional Conduct Rule 1.3 (1995). We caution the Plaintiff and Plaintiff's counsel that such a lackadaisical approach to this litigation is entirely inappropriate and tries the patience of this Court. We will expect more diligent and thoughtful conduct on the part of Plaintiff's counsel in the future.

The Plaintiff's equal protection claim hinges upon his status as a military reservist. A separate claim advanced by the Plaintiff alleges that public officials violated a federal statute by discriminating against him on the basis of his military status. This statute provides its own comprehensive enforcement mechanism. The Plaintiff may not now bypass that mechanism by alleging a constitutional violation and bringing suit directly under § 1983. In *Pfeiffer v. Marion Ctr. Area Sch. Dist.,* 917 F.2d 779 (3d Cir.1990), the Third Circuit affirmed the district court's holding that a plaintiff's constitutional claims were subsumed by Title IX. The *Pfeiffer* Court also cited the Supreme Court's holding in *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), as an additional bar to the plaintiff's constitutional claims. In *Sea Clammers,* the Supreme Court wrote, "when a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983." *Id.* at

20, 101 S.Ct. 2615 (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 673 n. 2, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979) (Stewart, J. Dissenting)).

Although the Third Circuit has not directly addressed the issue of constitutional claim preemption in the context of USERRA, we are persuaded by the rationale set forth in *Pfeiffer* and *Sea Clammers*. Accordingly, we find that the Plaintiff's equal protection claims are subsumed by USERRA. This finding is bolstered by the fact that dismissal of the Plaintiff's equal protection claim does not prejudice his case, as he has stated a separate cause of action under USERRA. For these reasons, we will grant the Defendants' Motion with respect to the Plaintiff's equal protection claims. Because we have dismissed these claims on the ground of statutory preclusion, we need not consider the Defendants' motivating factor, rational basis, and qualified immunity arguments.

### G. Claims under 38 U.S.C. § 4311 et seq.

The Uniformed Services Employment and Reemployment Rights Act prohibits employers from discriminating on the basis of a person's military status or service. The Defendants argue that the individual Defendants in this case cannot be considered "employers" under § 4303(4). They also state that the Defendant Borough did not violate the substantive provisions of § 4311, and that the Plaintiff has no claim under § 4316 because his military-related absence did not exceed 30 days. Finally, the Defendants argue that the Plaintiff should not be entitled to liquidated damages under § 4323. We will address each of these arguments in turn.

### 1. USERRA Claims against the Individual Defendants

 The Uniformed Services Employment and Reemployment Rights Act prohibits employers and potential employers from discriminating on the basis of military status. "Employer" is defined in the statute as a "person, institution, organization, or other entity that pays salary or wages for work

performed or that has control over employment opportunities, including (I) a person . . . to whom the employer has delegated the performance of employment-related responsibilities." 38 U.S.C. § 4304(4)(A). The Defendants argue that the individual Defendants named in the suit do not qualify as "employers" under this definition.[1] The Defendants point out that the Plaintiff had no duty to obey the orders of any single Borough Council member, and that no individual Borough Council member had the authority to hire or fire the Plaintiff.

The Plaintiff relies upon a district court opinion from the District of South Dakota which held that the president of a corporation qualified as an "employer" under USERRA. In *Novak v. Mackintosh*, 919 F.Supp. 870 (D.S.D.1996), the court held that the plaintiff's employer, who was the president of the company and to whom the plaintiff was directly responsible, qualified as an employer under the Act. We believe that this case is inapplicable to the case at bar.

The individual Defendants in the case sub judice had no individual power over the Plaintiff. The Plaintiff was not required to report to any of them individually. Rather, the entity which hired, directly supervised, and eventually fired the Plaintiff was the Borough Council itself. Therefore, we will grant the Defendants' Motion with respect to the Plaintiff's USERRA claims against the individual Defendants.

### 2. Plaintiff's Substantive Claims under § 4311

The Plaintiff alleges that he was terminated from his position in violation of 38 U.S.C. § 4311. This statute reads, in relevant part:

(a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis

---

1. Congress expressly provided in the USERRA that the term employer includes the states. 38 U.S.C. § 4303(4)(A)(iii).

of that membership, application for membership, performance of service, application for service, or obligation.

(b) An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. . . .

(c) An employer shall be considered to have engaged in actions prohibited—

(1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service; or

(2) under subsection (b), if the person's (A) action to enforce a protection afforded any person under this chapter, (B) testimony or making of a statement in or in connection with any proceeding under this chapter, (C) assistance or other participation in an investigation under this chapter, or (D) exercise of a right provided for in this chapter, is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's enforcement action, testimony, statement, assistance, participation, or exercise of a right.

38 U.S.C. § 4311. The Plaintiff has asserted claims under subsections (a) and (b), alleging that he was fired because of his reserve status, and because of the complaint he filed against the Borough Council with the Department of Labor.

 In order to prevail under § 4311 at trial, the Plaintiff must establish, by a preponderance of the evidence, that his military status was a motivating factor in the adverse employment action. *See Gummo v. Village of Depew,* 75 F.3d 98, 106 (2d Cir.), *cert. denied,* 517 U.S. 1190, 116 S.Ct. 1678, 134 L.Ed.2d 780 (1996). If the Plaintiff satisfies this burden, the Defendants may still defeat the claim by proving that the Borough Council would have made the same decision regardless of the Plaintiff's protected status.

### a. Motivating Factor

 The Plaintiff alleges that beginning in 1991 and escalating until the time of, and even after his termination, the Defendants made negative comments about his military reserve obligations. The Defendants argue that the Plaintiff has failed to establish discriminatory conduct on the part of each individual Defendant to the extent that a reasonable jury could find against each of them. Because we have dismissed the Plaintiff's USERRA claims against the individual Defendants, this argument is moot. However, the Plaintiff has identified evidence from which a reasonable jury could infer discrimination on the part of the Borough Council. *See e.g.,* Rizzuto Dep. at 330–331 (Rizzuto complained that seven weeks paid leave was excessive); Pugh Dep. at 209 (Council members made derogatory comments about the Plaintiff playing army or weekend warrior); Plaintiff's Exhibit 14 (Plaintiff's contemporaneous letter detailing discriminatory treatment); Reed Dep. at 93–95 (Witness testified that Borough Council wasn't happy with the Plaintiff's military status).

Based upon the evidence presented by the Plaintiff, we believe that a reasonable jury could find against the Borough on the basis of the Borough Council's action. A jury could also find that the proximity of the termination and the Plaintiff's military-related absence (the Plaintiff was fired approximately two days after his return) indicates that the Plaintiff's termination was related to his military status. *See Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir.1989), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). Therefore, we find that the Plaintiff has satisfied his initial burden by providing evidence from which a reasonable jury may infer military-status discrimination.

### b. Alternative Explanation for Termination

The Defendants argue that even if the Plaintiff can meet his initial burden, there is evidence to show that he would have been terminated regardless of his military status. The Defendants have suggested approximately a dozen reasons for firing the Plaintiff, all unrelated to the Plaintiff's military status. *See* discussion *supra* Part II.A.5. Although there is some evidence that many of these reasons may not have been considered at the time the Plaintiff was terminated, the Defendants argue that any of them would have been sufficient to justify the termination.

Viewing the evidence presented in the light most favorable to the non-moving party, we find that a reasonable jury could conclude that the Plaintiff would not have been fired but for his military status. The Plaintiff has presented colorable evidence that many of the factors cited by the Defendants were known to at least some members of the Borough Council long before the Plaintiff was terminated. A reasonable jury could infer from this evidence that if the Borough Council knew of these factors and did not act to remove the Plaintiff, they must have been insufficient to justify the Plaintiff's firing. In addition, the Plaintiff has presented evidence to challenge the validity of most of these explanations. *See e.g.,* Rizzuto Dep. at 303 (acknowledging that it was the Council's decision to stop the discount to Pottsville Bleach & Dye); Satterfield Dep. II at 38–39 (failure to implement the rate increase was the fault of Assistant Borough Manager Berger, who was admonished by the Council); Satterfield Dep. II at 11–12, 17–21 (the Plaintiff was told by the Borough President not to deal with the grant spending issue); Rizzuto Dep. at 122–124 and Pugh Dep. at 41–43 (admission that no investigation into grant spending was made before blame was assigned); Rizzuto Dep. at 280, 289 (admission that two persons other than the Plaintiff represented the Borough before the PUC when seeking a rate increase); Pugh Dep. at 86 (admission that the Plaintiff was "prudent" or "overly cautious," but "not irresponsible" regarding revenue projections). Furthermore, the new Council members would likely have had no independent knowledge of many these incidents. *See e.g.,* Deposition of Anthony LaScala taken April 25, 1997 ("LaScala Dep.") at 25–29.

On the basis of the evidence presented thus far, it would be premature for us to hold, as a matter of law, that the Defendants' decision to discharge the Plaintiff was not based, at least in part, on illegal bias. Therefore, we will deny the Defendants' Motion to dismiss the Plaintiff's § 4311 claim against the Borough.

### 3. Plaintiff's Claim under § 4316

Section 4316 of USERRA reads, "A person who is reemployed by an employer under this chapter shall not be discharged from such employment, except for cause ... (2) within 180 days after the date of such reemployment, if the person's period of service before the reemployment was more than 30 days but less than 181 days." 38 U.S.C. § 4316(c). The Defendants argue that the Plaintiff should not be allowed to assert a claim under § 4316 because his deposition testimony indicates that his period of service just prior to being terminated was, at most, 29 days.

We agree that the Plaintiff's deposition testimony, if taken literally, implies that the Plaintiff was on duty for no more than 29 days. Nevertheless, in light of the imprecise language which pervades this portion of the Plaintiff's deposition,[2] coupled with the affidavit in which the Plaintiff states that he was on duty for 34 days,[3] we find that the Plain-

---

2. In his initial deposition, the Plaintiff said, "Initially, it was for two 5–day periods, and then there was a 4–day period added onto that. And then there was—and I believe 2 weeks added onto that continuous. And I don't know if that was 13 days or 14 days or 15. I don't recall. It's approximately 2 weeks." Satterfield Dep. I at 16.

3. In his February 1997 affidavit, the Plaintiff states, "... I was either on active duty or performing drills from February 23, 1996, until March 31, 1996. The total number of days for that period of time was 34." Plaintiff's Exhibit 20. We are at a loss to explain how the total of 34 days was derived. As 1996 was a leap year, we would calculate the period of service as 38

tiff has satisfied the period of service durational requirement of § 4316(c).

The Defendants argue that even if the Plaintiff was on duty for more than 30 days, he should be precluded from suing under § 4316(c) because he was fired for cause. We have previously found that the issue of cause should be left to a jury. Therefore, we will deny the Defendants' Motion to dismiss the § 4316(c) claim against the Defendant Borough at this time.

### 4. Plaintiff's Claim under § 4323

For reasons which will be explained below, the Plaintiff will be allowed to recover damages against the Defendant Borough under 38 U.S.C. § 4323(c)(1)(A)(iii), should a jury see fit to award such damages. *See* discussion *infra* Part III.J. In summary, we will dismiss the Plaintiff's USERRA claims against the individual Defendants, and deny the Defendants' Motion with respect to the remaining USERRA claims.

### H. Breach of Contract and Equitable Estoppel Claims

 In his Response, the Plaintiff concedes that his breach of contract claim has no merit, as the Pennsylvania Legislature has never granted the Borough the specific power to contract away the power of summary dismissal. *See Bolduc v. Board of Supervisors of Lower Paxton Township*, 152 Pa. Cmwlth. 248, 618 A.2d 1188 (1992), *appeal denied*, 533 Pa. 662, 625 A.2d 1195 (1993). The Plaintiff then asserts a claim based upon equitable estoppel, claiming that the Borough Council knowingly induced the Plaintiff to rely upon an invalid contract to his detriment.

The Defendants argue that the Plaintiff should be estopped from asserting this claim, since it does not appear in any version of the Complaint. Although the Plaintiff was twice allowed to amend his Complaint and did not include an equitable estoppel cause of action at any time, we believe that the Plaintiff alleged facts sufficient to put the Defendants on notice of the equitable estoppel argument.

Nevertheless, after a careful review of the relevant case law, we find that the equitable estoppel claim fails on its merits.

In *Paul v. Lankenau Hospital*, 524 Pa. 90, 569 A.2d 346 (1990), the Supreme Court of Pennsylvania held that "[t]he doctrine of equitable estoppel is not an exception to the employment at will doctrine. An employee may be discharged with or without cause, and our law does not prohibit firing an employee for relying on an employer's promise." *Id.* at 348. In *Stumpp v. Stroudsburg Municipal Auth.*, 540 Pa. 391, 658 A.2d 333 (1995), the Court confirmed that "equitable estoppel has been affirmatively rejected by this Court as an exception to the at-will rule." *Id.* at 336. Pennsylvania law clearly provides that the doctrine of equitable estoppel does not apply to at-will employment. Therefore, we find that the Plaintiff's breach of contract and equitable estoppel claims must be dismissed.

### I. Defamation Claims

It appears that the Plaintiff's defamation claims are rooted in four specific incidents. They are as follows:

1. In April 1996, Borough Council "as a body" allegedly publicly blamed the Plaintiff for the Borough's loss of a Legislative Initiative Grant. *See* Satterfield Dep. II at 93; Complaint at ¶¶ 77–79.

2. In April 1996, at a public meeting, Defendant Bowen allegedly accused the Plaintiff of "fudging recycling numbers." *See* Complaint at ¶¶ 35–36.

3. In May 1997, a memorandum concerning this suit was distributed to the public at a Borough Council meeting. The memorandum blamed the Plaintiff for several incidents of mismanagement and stated that his termination was due to poor job performance. *See* Satterfield Dep. II at 105–115; Complaint ¶¶ 35–36.

4. In May 1997, a campaign flyer supporting the reelection campaigns of Defendants Rizzuto, Sattizahn, and Bowen was

---

days. Should it be established at trial that the period was less than that required by § 4316, we will reconsider the Defendants' Motion regarding

this cause of action. However, at this time it seems clear that the Plaintiff is swearing to a period of service of more than 30 days.

mailed to members of the public. The flyer stated that the Plaintiff had been dismissed for poor job performance, that he had always been an at-will employee, that he had been seeking employment in 1995 because he wanted to leave his job with the Borough, and that he voluntarily testified against the Borough at a police arbitration hearing in April 1996. *See* Plaintiff's Exhibit 28; Satterfield Dep. II at 97–103.

■ Under Pennsylvania law, a local agency, such as the Defendant Borough, is immune from causes of action sounding in defamation. 42 Pa. Cons.Stat. §§ 8541, 8542; *see also Five Star Parking v. Philadelphia Parking Auth.,* 662 F.Supp. 1053 (E.D.Pa. 1986). We will dismiss the Plaintiff's defamation claim against the Borough.

■ The Defendants argue that the defamation claims against the individual Defendants should also be dismissed because these Defendants are "high public officials," and as such are absolutely immune from suit for defamation. Under Pennsylvania law, "high public officials" are absolutely immune from suit for defamation for statements made within the scope of their authority. *Lindner v. Mollan,* 544 Pa. 487, 677 A.2d 1194, 1196 (1996). Whether a person is a "high public official" depends on "the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." *Id.* at 1198. The Supreme Court of Pennsylvania has granted such immunity to borough mayors, *id.* at 1199, township supervisors, *Jonnet v. Bodick,* 431 Pa. 59, 244 A.2d 751 (1968), and city architects and deputy commissioners of public property, *Montgomery v. City of Philadelphia,* 392 Pa. 178, 140 A.2d 100 (1958). Pennsylvania statutory law makes borough council members legislators, and therefore primary policy makers, of boroughs in Pennsylvania. 53 Pa. Cons.Stat. §§ 46005–46006. We have no trouble finding that borough council members qualify as "high public officials" for the purposes of immunity from defamation.

■ Without ruling on the defamatory nature of the first three publications identified above, we find that each was made within the scope the individual Defendants' authority. As such, the individual Defendants are immune to the Plaintiff's defamation claims which stem from these incidents.

■ The fourth publication, involving the campaign flyer circulated by the individual Defendants, was not made within the scope of their official authority, and therefore, immunity will not apply with respect to this claim. We note that at least one of the Defendants acknowledged that the flyer was released in his capacity as a private person. *See* Deposition of Wayne L. Bowen, Jr. taken April 29, 1997 ("Bowen Dep.") at 13.

■ The flyer contained four allegedly defamatory statements regarding the Plaintiff. It stated (1) that the Plaintiff had been dismissed for poor job performance, (2) that he had always been an at-will employee, (3) that he had been seeking employment in 1995 because he wanted to leave his job with the Borough, (4) and that he voluntarily testified against the Borough at a police arbitration hearing in April 1996.

Under Pennsylvania law, in an action for defamation, a plaintiff must prove seven things:

1. The defamatory character of the communication.
2. Its publication by the defendant.
3. Its application to the plaintiff.
4. The understanding by the recipient of its defamatory meaning.
5. The understanding by the recipient of it as intended to be applied to the plaintiff.
6. Special harm resulting to the plaintiff from its publication.
7. Abuse of a conditionally privileged occasion.

42 Pa. Cons.Stat. § 8343(a).

■ As a preliminary matter, we find that a reasonable jury could interpret the statements regarding the Plaintiff's job performance and arbitration testimony as defamatory under § 8343(a). This determination involves a matter of law, and is therefore properly made by the court rather than the jury. *See Elia v. Erie Insurance Exchange,* 430 Pa.Super. 384, 634 A.2d 657 (1993), *appeal denied* 537 Pa. 662, 644 A.2d 1200 (1994). We also find that the statements in

the flyer regarding the Plaintiff's at-will status and 1995 job search are substantially accurate, and are not capable of defamatory meaning.

Once a plaintiff has established his or her burden under § 8343(a), the burden then shifts to the defendant to prove, when relevant to the defense:

1. The truth of the defamatory communication.

2. The privileged character of the occasion on which it was published.

3. The character of the subject matter of defamatory comment as of public concern.

42 Pa. Cons.Stat. § 8343(b).

Although a portion of the flyer may satisfy the requirements of § 8343(a), we will grant the Defendants' Motion to dismiss this claim because we find that the statements regarding the Plaintiff's job performance and arbitration testimony involved issues of public debate. The Plaintiff was a candidate for public office, and thus his record was a matter of public concern. We are persuaded by the words of the Pennsylvania Superior Court in *Redding v. Carlton,* 223 Pa.Super. 136, 296 A.2d 880 (1972):

[I]n deciding whether or not a publication is defamatory, courts should be guided by America's profound "commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement caustic and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 [84 S.Ct. 710, 11 L.Ed.2d 686] (1964). The constitutionally protected area of free speech revolves around the freedom to criticize government and the officials responsible for government operations. *Rosenblatt v. Baer,* 383 U.S. 75, 85 [86 S.Ct. 669, 15 L.Ed.2d 597] (1966). To prevent a chilling effect on free speech, the Supreme Court of Pennsylvania has held that "statements which represent differences of opinion or are annoying or embarrassing, are without more not libelous." *Bogash v. Elkins,* 405 Pa. 437, 440, 176 A.2d 677 (1962). Neither is a statement libelous which is "no more than rhetorical hyperbole" or "a vigorous epi-

thet" used to describe what the publisher believes to be another's extremely unreasonable position. *Greenbelt Coop. Publ'g Ass'n. v. Bresler,* 398 U.S. 6, 14 [90 S.Ct. 1537, 26 L.Ed.2d 6] (1970).

*Id.* at 139, 296 A.2d 880.

The portions of the flyer at issue illustrate some of the worst aspects of the rhetorical hyperbole which characterizes modern American politics. We believe that these remarks are misleading and demonstrate poor judgement on the part of the individual Defendants. Nevertheless, we cannot ignore the fact that they concern a person who had, until recently, held an important public office, and who was at the time a candidate for another public office. Accordingly, the statements in the flyer were privileged, and the individual Defendants cannot be held liable therefor.

## J. Punitive Damages Claim

The Defendants divide their motion to dismiss the Plaintiff's punitive damages claim into two parts—one dealing with the claim against the Borough and the other with the claim against the individual Defendants. We will address the Defendants' arguments in that order.

### 1. Punitive Damages against the Defendant Borough

In response to the Defendants' argument that the punitive damages claim should be dismissed against the Borough, the Plaintiff merely states, "Plaintiff offers not [sic] argument herein." Plaintiff's Memo at 74. Again, we are disappointed with the lack of care evidenced by the Plaintiff's attorney in drafting his Complaint and response. If Plaintiff's counsel chooses not to respond because he thinks it clear that this claim has no merit, the claim never should have been filed in the first place, and should be withdrawn. If, on the other hand, Plaintiff's counsel believes that the claim is proper and merely chooses not to respond, he is neglecting his responsibility to represent his client zealously.

■ Having reviewed the Defendants' argument in favor of dismissing the punitive damages claim against the Borough, we are of the opinion that a partial dismissal is appropriate. The Supreme Court has explicitly held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). In addition, municipalities are not liable for punitive damages under Pennsylvania state law claims. *Township of Bensalem v. Press*, 93 Pa.Cmwlth. 235, 501 A.2d 331, 338 (1985).[4] Therefore, the only way in which punitive damages may be available against the Defendant Borough would be under the Plaintiff's USERRA claim.

■ The provision of USERRA dealing with damages can be found in 38 U.S.C. § 4323(c). The question of whether this section provides for punitive damages is an interesting one. We have not found any case law interpreting this provision, which states:

(c)(1)(A) The district courts of the United States shall have jurisdiction, upon the filing of a complaint, motion, petition, or other appropriate pleading by or on behalf of the person claiming a right or benefit under this chapter—

(i) to require the employer to comply with the provisions of this chapter;

(ii) to require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter; and

(iii) to require the employer to pay the person an amount equal to the amount referred to in clause (ii) as liquidated damages, if the court determines that the employer's failure to comply with the provisions of this chapter was willful.

38 U.S.C. § 4323(c)(1)(A). The Defendants argue that the failure of this passage to mention "punitive" damages means that punitive damages are unavailable under USERRA. The Plaintiff takes no position whatsoever on the issue.

Although clause (iii) labels the damages described therein "liquidated," we are inclined to view them as more punitive in nature. Clause (iii) seems to be designed to compensate a plaintiff "over and above what will barely compensate him for his property loss, where the wrong done to him was aggravated by circumstances of ... wanton and wicked conduct on the part of the defendant." Black's Law Dictionary 390 (6th ed.1990) (defining "Exemplary or punitive damages"). The widely-known "duck test" reads, "If it looks like a duck, feels like a duck, and quacks like a duck, it must be a duck." Although clause (iii) does not explicitly label the damages described therein as "punitive," we believe that these damages are punitive in nature. The "liquidated" damages of clause (iii) compensate a plaintiff beyond the actual level of his or her injury and will only be awarded where the misconduct of the defendant was willful. In other words, clause (iii) "liquidated" damages look, feel, and quack like punitive damages, and therefore, we will treat them as such.

We will grant the Defendants' Motion regarding punitive damages in part, dismissing all punitive damages claims against the Defendant Borough which may arise under § 1983 or state law. However, the Plaintiff will be permitted to recover damages against the Defendant Borough[5] under 38 U.S.C.

---

4. The Commonwealth Court wrote, "no valid purpose is served in assessing such [punitive] damages, but rather the effect is merely to place the burden on the tax paying public." *Press*, 501 A.2d at 338. While we recognize that a decision of the Commonwealth Court is not binding upon this court when we are applying state law, the Plaintiff has not suggested any reason for us to disregard the opinion expressed by the learned state court.

5. A similar provision allowing liquidated damages for willful violations related to age discrimi-

nation may be found in 29 U.S.C. § 626(b). The ADEA covers state and local governments. *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983). Liquidated damages may be recovered from state and local governments. *See Rademaker v. State of Nebraska*, 906 F.2d 1309, 1313 (8th Cir.1990); *Kossman v. Calumet County*, 800 F.2d 697, 699 (7th Cir.1986), *cert. den.*, 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 151; *EEOC v. County of Allegheny*, 519 F.Supp. 1328, 1337 (W.D.Pa.1981), *aff'd*, 705 F.2d 679.

§ 4323(c)(1)(A)(iii), should a jury see fit to award such damages.

### 2. Punitive Damages against the Individual Defendants

The Defendants argue that an award of punitive damages against municipal officials sued in their individual capacities may be made only "if the individual defendants' conduct can be shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Robey v. Chester County*, 946 F.Supp. 333, 338 (E.D.Pa.1996).

We are aware that punitive damages may be awarded against individual defendants who have violated state laws. *See e.g., Bernhardt v. Needleman*, 705 A.2d 875 (Pa.Super.1997); *Bannar v. Miller*, 701 A.2d 232 (Pa.Super.1997). However, as we have granted the Defendants' Motion with respect to all state law claims against the individual Defendants, the issue of punitive damages on such claims is moot. In addition, we have found that the Plaintiff's USERRA claims against the individual Defendants warrant dismissal. Therefore we need not address the possibility of punitive damages against the individual Defendants under this statute.

We have found that the Plaintiff's due process and equal protection claims should be dismissed. However, we now find that the Plaintiff has presented evidence which a reasonable jury may interpret as demonstrating malice or callous indifference on the part of the individual Defendants toward the Plaintiff's First Amendment rights. *See e.g.,* Sattizahn Dep. at 87–88; Plaintiff's Exhibit 28; Satterfield Dep. I at 43–45. Therefore, the Plaintiff will be permitted to seek punitive damages on his First Amendment claims against Defendants Rizzuto, Sattizahn, and Bower in their individual capacities.

### IV. SUMMARY

For the reasons stated above, we have dismissed all claims against the Borough Council and against the individual Defendants in their official capacities. We have also dismissed the Plaintiff's due process, equal protection, breach of contract, equitable estoppel, and defamation claims against the remaining Defendants. In addition, we have dismissed the Plaintiff's USERRA claim against the individual Defendants.

We have denied summary judgment on the First Amendment claims against the Borough and the individual Defendants in their individual capacities. We have also denied summary judgment on the USERRA cause of action against the Borough. Regarding damages, we have held (1) that the Plaintiff may seek punitive damages against the individual Defendants in their individual capacities on his First Amendment cause of action, and (2) that the Plaintiff may seek damages against the Defendant Borough under 38 U.S.C. § 4323(c)(1)(A). These claims and any appropriate damages shall be determined by a jury in the event that the parties are unable to settle this matter themselves. An appropriate Order follows.